**In re David L. GONGAWARE, Debtor.**

**David L. GONGAWARE, Movant,**

**v.**

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Respondent.**

**Bankruptcy No. 95–22608 JKF. Motion No. JPV–1.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 28, 1997.

John P. Vetica, Jr., Pittsburgh, PA, for Debtor.

Angelo A. Frattarelli, Washington, DC, for United States.

### MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

We must determine Debtor's Objections to Proof of Claim of the Internal Revenue Service. The IRS claim is for the 100 percent penalty assessed against Debtor pursuant to 26 U.S.C. § 6672 for trust fund taxes that were not paid by Triad Manufacturing Company, of which Debtor was vice president and 49 percent shareholder.[2] Triad Manufacturing Company filed a chapter 11 on or about March 18, 1987.[3] At that time, Triad owed approximately $40,000 to the IRS. Most of this amount represented unpaid employment taxes. On or about May 6, 1987, the IRS assessed a 100 percent civil penalty against "Dave Gongaware" and John Guckert, Triad's 51 percent shareholder, as responsible officers of Triad for the periods ended September 30, 1986, December 31, 1986, and March 31, 1987, in the amount of $24,480.54.[4] *See* Government Exhibit A–2. On October 29, 1990, the IRS again assessed a civil penalty against "Dave Gongaware" as a responsible officer of Triad in the amount of $6,092.09 for the period ended September 30, 1988.[5] Government Exhibit B–2.

Debtor filed this chapter 13 petition on July 14, 1995. The IRS timely filed a proof of claim asserting a secured claim in the amount of $12,350 and an unsecured priority claim in the amount of $49,017.22. An amended proof of claim was filed on or about

---

1. The court's jurisdiction is not at issue. This opinion constitutes our findings of fact and conclusions of law.

2. Triad Manufacturing Company was formed in 1982 by John H. Guckert, William J. Nauman, and William G. Kohlur. It manufactured precision machine parts which it sold to the United States Department of Defense. In April of 1983, Guckert and Nauman bought out Kohlur's interest in Triad. Thereafter, in November of 1985, Guckert purchased Naumans' interest and became the 100 percent owner. In April of 1986, Debtor purchased 49 percent of the outstanding stock of Triad from Guckert and became Triad's vice president. Guckert remained as president and retained 51 percent of the stock for the tax periods in question.

3. Triad Manufacturing company's chapter 11 was filed at case number 87–20717. The case was closed on April 24, 1990.

4. Government exhibits relating to this assessment begin with the letter "A".

5. Government exhibits relating to this assessment begin with the letter "B".

March 8, 1996, in the amount of $54,103.33, of which $12,350 is claimed as secured and $41,753.33 as unsecured. Debtor seeks an order disallowing the claim of the Internal Revenue Service on the grounds that (1) the taxes were not properly assessed and he was not the person identified on the relevant documents, (2) if the identified person was Debtor, he cannot be considered a "responsible person" of Triad because he exercised insufficient control over the company's financial affairs and (3) the amounts claimed by the IRS are too high. The facts as stipulated by the parties and as found by the court from the evidence presented at trial on November 1, 1996, follow, as do our conclusions of law.

### Is Debtor the "Dave Gongaware" Who Was Assessed in 1987?

Debtor does not admit that he is the "Dave Gongaware" against whom the assessments were made. In connection with Debtor's name, the 1987 assessment stated an address and social security number that were not his. The IRS's internal request for assessments, Form 2749, Government Exhibit A–2, identifies the responsible person of Triad as:

David Gongaware
536 Oakland Avenue
Greensburg, PA 15601
Social Security Number AAA–BB–CCCC *

Under the heading "Related Assessments" is listed:

John Guckert
660 Kimlyn Avenue
N. Huntington, PA 15642
Social Security Number XXX–YY–ZZZZ *

---

\* (For illustrative purposes.)

Debtor's social security number is XXX–YY–ZZZZ and Guckert's is AAA–BB–CCCC. Debtor resides, and has resided at all relevant times, at 16 Observatory Street, Manor, Pennsylvania. His mailing address is and has been at all relevant times P.O. Box 584, Manor, Pennsylvania, 15665. The evidence adduced at trial established that another David Gongaware resides at the Oakland Avenue address listed on the 1987 assessment. Debtor testified, and his testimony is undisputed, that this is not his address, that he does not know the other David Gongaware

and that the two are not related. The IRS concedes that the contested information on the assessment was incorrect. According to the deposition testimony of Katherine Biros, a tax examiner's assistant for the Congressional Unit of the Technical Problem Resolution Program of the IRS, the incorrect address and social security number appearing in connection with Debtor's name were not corrected in the IRS records concerning the assessment until August of 1989 (social security number) and October of 1990 (address). Ms. Biros testified that Debtor's address was changed later due to the processing of a tax return in the week of October 14, 1990. See Deposition Exhibit 2, Certificate of Official Record regarding attached Certificate of Assessments and Payments. ·

The second assessment occurred on October 29, 1990, after the address and social security number were corrected. The documents show the following: Government Exhibit B–2, Request for 100 Percent Penalty Assessment, created around September of 1990, contains the same names, addresses, and social security numbers that appeared on the 1987 Request for 100–Percent Penalty Assessment, Government Exhibit A–2, but the typed social security numbers for Gongaware and Guckert are lined through and their correct social security numbers are handwritten next to their names. The evidence shows that the social security number of each was originally typed next to the other's name and later corrected by hand. Government Exhibit B–2.

Notwithstanding the incorrect social security number and address on the 1987 assessment, we find that Debtor was sufficiently identified. The errors cast doubt on the accuracy of the amount of the assessment, which will be discussed below, but not on the identity of the taxpayer. The social security numbers on the 1987 assessment belong to Debtor and Guckert, the sole officers and shareholders of Triad, although the positions of the social security numbers on the form were switched. Marilyn Riccio, accounting technician at the IRS' Philadelphia Service Center, testified that the taxpayer's social security number is the mode of identification used most often by the IRS and that it is the

single most important piece of information. The address was not corrected until October of 1990 but this is not dispositive. It was corrected prior to the October 29, 1990, assessment and, even before that, Debtor certainly knew that he, not another David Gongaware, was one of two shareholders in Triad and that the other was John Guckert.

Section 301.6109–1 of title 26 of the Code of Federal Regulations states that there are three types of taxpayer identifying numbers: the social security number, the IRS individual taxpayer identification number, and the employer identification number. The social security number is defined in 301.7701–11 as the taxpayer identifying number of an individual. Section 6109(a) of the Internal Revenue Code states that an identifying number shall be included in returns when required by regulation and that that number is the social security number. Section 301.6109–1(a)(ii)(A) states that "an individual required to furnish a taxpayer identifying number must use a social security number".[6] *See also* 26 U.S.C. § 6109(d); 26 C.F.R. § 31.3406(h)–1(b) (taxpayer identification number is "generally a nine-digit social security number for an individual"); 26 C.F.R. § 31.6109–1(a) (requires a return to "reflect such identifying numbers as are required by each return, statement, or document and its related instructions").

■ Accounting technician Marilyn Riccio further testified that in the performance of her duties she uses the social security number provided by the Revenue Officer which, in this case, with respect to Debtor, originally was Guckert's. Although the wrong social security number appeared on the 1987 assessment, there were only two social security numbers involved and each belonged to one of the owners and officers of Triad. Both of their names were listed on the Request for 100–Percent Penalty Assessment. In *Moore v. United States*, 1993 WL 414711, 72

A.F.T.R.2d 93–6571 (E.D.Cal.1993), the court found that the supporting record that identified the taxpayer as "Richard A. Moore" without "Sr." added to the surname was sufficient to support the assessment, even though the underlying documentation contained the social security number of the taxpayer's son, Richard A. Moore, Jr. In the matter before us Debtor's correct social security number was on the assessment, albeit associated with Guckert's name. Because Guckert's social security number was associated with Debtor's name and no other names or social security numbers were involved, the identification was sufficient inasmuch as Debtor and Guckert were the only shareholders and no other possible responsible persons have been identified of record. Even though the IRS is not *required* to identify a taxpayer by his social security number, *Moore*, 1993 WL 414711 at *2, it used those numbers in this case. This fact, coupled with Ms. Riccio's testimony that the IRS relies on the social security number for taxpayer identification purposes, establishes that Debtor was sufficiently identified.

■ Based on the testimony and the relevant statutory and regulatory provisions, we find that the assessment was made against Debtor and not the David Gongaware who resides on Oakland Avenue. Debtor would not have been misled by the error and offered no evidence that the other David Gongaware was the person assessed. His contention is that the IRS can make no mistakes in an assessment in order to assure its validity.[7] We have examined the errors and find that they were not sufficient to cause prejudice to Debtor who was sufficiently identified as a responsible person in the assessment. Thus, the only questions remaining are whether Debtor had sufficient control of Triad to be a responsible person, whether the assessment was valid (for reasons other than the ministerial errors just addressed), and

---

**6.** An exception exists if one is not eligible to obtain a social security number in which case the taxpayer identification number should be used. 26 C.F.R. 301.6109–1(a)(ii)(B). This exception does not apply to Debtor. *See also id.* at 301.6109–1(a)(ii)(D) (employer should use an employer identification number).

**7.** The first challenge Debtor mounts to the assessment concerns his identity and we find, as matter of law, that he was sufficiently identified in the assessment. The second concerns the amount of the assessment. To the extent that amounts were not assessed they are not liened, as discussed *infra. See also* note 12, *infra.*

whether the amount reflected in the proof of claim is correct.

### Was Debtor a "Responsible Person" Under 26 U.S.C. § 6672?

■ Having found that Debtor was sufficiently identified on the assessment documents, we turn to the question of whether he is a "responsible person" under 26 U.S.C. § 6672. Section 6672(a) provides that

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax . . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax . . . not collected, or not accounted for and paid over.

An employer is required to pay over amounts withheld. 26 U.S.C. § 3403. An employer includes a person with control of the payment. 26 U.S.C. § 3401(d)(1). *See also Bolding v. U.S.*, 215 Ct.Cl. 148, 565 F.2d 663, 670 (1977). We find that Debtor had control of the payments and willfully failed to pay them over.

■ The factors to consider in determining whether a taxpayer is a responsible person include his (1) control of the voting stock; (2) status in the corporation; (3) check signing authority, including the ability to prevent issuance by refusing to sign; (4) duties; (5) control and authority over the day-to-day management of corporate affairs. *DiStasio v. U.S.* 22 Cl.Ct. 36 (1990). *See also Godfrey v. U.S.*, 748 F.2d 1568, 1576 (Fed.Cir.1984); *Heimark v. U.S.*, 18 Cl.Ct. 15 (1989). In *DiStasio* the court held that DiStasio was not a responsible person because he (1) never owned a controlling interest and so could never have made a management decision without the majority shareholder's consent; (2) never performed day-to-day management or had any significant role in the corporation's financial affairs; (3) spent very little time in the office; (4) had little knowledge of the corporation's financial affairs; (5) had no ready access to the books and could not have understood them had he had access; (6) often signed checks in blank but could not have written a corporate check without the per-

mission of the majority shareholder; and (7) did not file corporate tax returns, prepare payroll or have anything to do with the corporate legal affairs. The court further noted that, even if DiStasio had refused to sign checks during part of the period in question, there was a third shareholder who could have provided the requisite second signature and, later, when the only shareholders were DiStasio and Hudlett, Hudlett, as the majority shareholder, could have changed the corporate signature requirements. Ultimately, the court concluded that DiStasio's check signing authority was "merely ministerial". He did not have the actual authority to direct payment and could not have prevented another from totally controlling all disbursement of funds. *Cf., Heimark v. U.S.*, 18 Cl.Ct. 15 (1989) (mechanical duty of signing checks and preparing tax returns is not determinative); *Bolding v. U.S.*, 215 Ct.Cl. 148, 565 F.2d 663 (1977) (taxpayer held to be responsible person even though his signature alone was insufficient to cause disbursement of funds since by withholding his signature he could have prevented disbursement); *Burack v. U.S.*, 198 Ct.Cl. 855, 461 F.2d 1282 (1972) (exclusive control over corporate affairs is unnecessary).

■ The test is whether the taxpayer had the ultimate authority over the disposition of funds; i.e., the "power and authority to 'avoid the default' or to direct the payment of taxes". *Powell v. U.S.*, 9 Cl.Ct. 58, 61 (1985) quoting *White v. U.S.*, 178 Ct.Cl. 765, 372 F.2d 513, 516 (1967). The determining factor is actual authority in a practical sense. *See generally Powell v. U.S.*, 9 Cl.Ct. 58, 61 (1985); *Godfrey v. U.S.*, 748 F.2d 1568 (Fed. Cir.1984).

■ In *Hammon v. U.S.*, 21 Cl.Ct. 14 (1990), the court examined whether the taxpayer had the requisite status and authority to control the decision-making process as to allocation of funds, whether his duties included same, and whether he had ultimate authority over expenditure of funds. In that case, the taxpayer presided over a network of businesses covering the sale and leasing of automobiles and was the 100 percent stockholder and the president. The by-laws of the

corporation defined the president's duties as including general supervision over corporate affairs, the signing of stock certificates and contracts, countersigning of checks, et cetera. Although the status prong of the test is not met merely by holding corporate office, the functions associated with the status and the allegedly responsible person's performance of those functions indicate whether the person had "ultimate authority" or "power to control" the disposition of funds. *Hammon*, 21 Cl.Ct. at 24, citing *Godfrey*, 748 F.2d at 1575.

In the case at bench, although Debtor testified that his title was Vice President of Quality Control, he signed promissory notes on behalf of Triad as its Secretary/Treasurer. Government Exhibits G–1, G–2. Furthermore, he is listed on Triad's Statement of Financial Affairs, filed of record in this bankruptcy court, as "V.P., Treasurer", and he signed the Statement. *See* Bankruptcy No. 97–20717; Government Exhibit H–2. *See also id.* at H–1, H–3 through H–6. What is more, his duties encompassed more than quality control, as illustrated by his testimony.

 Although he was only a 49 percent shareholder, Debtor testified that he had assisted Triad in obtaining funding, was a signatory on its checking account, signed most of the checks, and paid suppliers, vendors, tax creditors, and lenders. Debtor testified that Guckert told him who to pay and that he and Guckert sometimes disagreed concerning which creditors to pay but, because Guckert was the majority shareholder he overruled Debtor and Debtor went along with the decision. However, Debtor also testified that he participated in reviewing invoices to be paid and signed the Form 941 federal quarterly employer tax returns for Triad. When Triad filed its bankruptcy petition Guckert was in the hospital and Debtor signed the petition and schedules. Based on these facts, we find that Debtor exercised sufficient control over the day-to-day management of Triad's financial affairs and that he had and exercised the authority to determine which creditors to pay and when they would be paid. Even if Guckert sometimes made the decision on these points, Debtor generally decided who to pay and executed the payment process. Furthermore, there was no testimony that any disagreement between Debtor and Guckert had to do with payment of the taxes at issue. Debtor had significant control over which creditors to pay, notwithstanding the fact that he was a minority shareholder. *See U.S. v. Carrigan*, 31 F.3d 130, 133 (3d Cir. 1994) (responsible person need only have significant, not exclusive control over finances; one "has significant control if he has the final *or significant word* over which bills or creditor get paid") (emphasis added); *Howard v. U.S.*, 711 F.2d 729, 734 (5th Cir.1983) (minority shareholder status "is legally insufficient to establish that he was not a 'responsible person' ").[8] Moreover, instructions from a superior to not pay the tax do not negate the responsible person status of the subordinate. *Brounstein v. U.S.*, 979 F.2d 952, 955 (3d Cir.1992) (nonshareholder president and assistant treasurer of corporation had significant, not exclusive control over corporation's finances).[9]

In addition, as early as 1986, Debtor was aware that Triad was delinquent on its taxes. He testified that notice that taxes were owed was received in the mail, "a stream" of letters followed, and a Revenue Officer paid a visit to discuss the employment taxes. Debtor and Guckert met with the Revenue Officer. Debtor also testified that he and Guckert factored contracts to try to pay the tax liabilities and that he told Guckert to pay the tax bills. This, however, is not enough to excuse Debtor's failure to ensure that the taxes were paid. Debtor was substantially involved in Triad's daily operations and fi-

---

**8.** In *Howard v. U.S.* the court stated that minority shareholder status would be relevant only to the extent that it supported the taxpayer's testimony that he was just following orders. In this regard, however, the court noted "Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means *effective power to pay.*" 711 F.2d at 734.

**9.** Even the risk of losing one's job for disobeying instructions to not pay the tax does not relieve an otherwise responsible person of the obligation to pay the tax. *Brounstein v. U.S.*, 979 F.2d at 955. *See also Howard v. U.S.*, 711 F.2d 729, 734 (5th Cir.1983).

nancial concerns, unlike the taxpayer in *DiStasio* who had no day-to-day management responsibilities and did not participate in a significant way in corporate management. Debtor's role was more akin to that of the taxpayer in *Burack v. U.S.*, 198 Ct.Cl. 855, 461 F.2d 1282 (1972), who was "directly concerned with the financial aspects of the corporation" and had authority to control finances. *See DiStasio*, 22 Cl.Ct. at 47. Thus, Debtor's reliance on *DiStasio* is misplaced.

Although the possibility exists that Guckert, the majority shareholder, could have exercised his ownership rights to divest Debtor of authority and control over corporate finances and bill-paying, there is no evidence that any such action occurred. Furthermore, Debtor never refused to sign checks and admitted that he paid other creditors knowing that taxes were due. He was intimately involved in Triad's finances, even meeting with the IRS concerning the unpaid taxes. As the corporation was structured and operated during the time in question, Debtor actually had and exercised the necessary degree of control to be deemed a "responsible person" for purposes of 26 U.S.C. § 6672. *See generally Powell v. U.S.*, 9 Cl. Ct. 58, 62 (1985) (taxpayer was substantially involved in day-to-day operations and signed the bankruptcy documents). Based on his own testimony, we find that Debtor had the requisite authority and control over Triad's financial affairs and day-to-day operations to make the tax payments and is a responsible person for purposes of 26 U.S.C. § 6672.

### Willful Failure to Pay the Tax

Having concluded that Debtor is a responsible person we now consider whether he willfully failed to pay the taxes due. In *DiStasio* the court noted that liability should not be imposed without personal fault on the part of the taxpayer, even if the taxpayer is a responsible person. *DiStasio*, 22 Cl.Ct. at

47, citing *Slodov v. U.S.*, 436 U.S. 238, 254, 98 S.Ct. 1778, 1788–89, 56 L.Ed.2d 251 (1978). At the very least there must be evidence of a deliberate choice to pay non-government creditors or of a reckless disregard of the duty to pay. *DiStasio*, 22 Cl.Ct. at 47–48, citing *Powell v. U.S.*, 9 Cl.Ct. 58, 62 (1985). The standard has been articulated as:

> A failure to pay taxes is deemed willful if it is "a deliberate choice voluntarily, consciously and intentionally made to pay other creditors instead of paying the Government, and ... it is not necessary that there be present an intent to defraud or to deprive the United States of the taxes due, nor need bad motives or wicked design be proved in order to constitute willfulness."

*Powell v. U.S.*, 9 Cl.Ct. at 62. In *Godfrey v. U.S.*, 748 F.2d 1568, 1576 (Fed.Cir.1984), the court opined that the responsible person must have had actual notice of the delinquency in order to find a duty to act. An actual intent to defraud the government is not necessary. Debtor testified that he knew that taxes were not being paid. He admitted that he used available funds to pay non-government creditors in the face of this knowledge.[10] Debtor's instruction to Guckert to pay the taxes does not constitute a reasonable effort to ensure tax compliance in light of the fact that Debtor was the person issuing most of the checks. *See Hammon*, 21 Cl.Ct. at 28–29.

The instant case is distinguishable from *DiStasio* wherein the taxpayer held only a 24.5 percent ownership interest, had check signing authority but never signed a check or paid a bill without approval and was never responsible for dealing with creditors. Here, Debtor testified that he shared equal responsibility for dealing with Triad's creditors and performed most of the check signing duties. In *DiStasio* the taxpayer did not have actual authority to direct payment and could not

---

**10.** The absence of a reckless disregard of a duty to pay the tax may suffice to establish the absence of willfulness. Proof of the absence of one of the following must exist: (1) knowledge that the taxes were unpaid; (2) a reasonable opportunity to discover and remedy the non-payment of tax; or (3) failure to undertake reasonable efforts to ensure payment. *See, e.g., Godfrey v. U.S.*, 748 F.2d 1568 (Fed.Cir.1984); *Hammon v. U.S.*, 21 Cl.Ct. 14 (1990). Debtor admitted at trial that he knew in 1986 that payment of the withholding taxes was delinquent. *See also Hammon*, 21 Cl.Ct. at 27 ("taxpayers may violate § 6672 willfully either by choosing to pay creditors other than the United States with knowledge of the tax delinquency, or by recklessly disregarding a known risk that taxes might not be paid").

have prevented the majority shareholder from controlling all disbursements. He had no custody or control of the corporate records and his title as vice-president, treasurer and, later, secretary, was meaningless in that the designation had no relation to his limited responsibilities. In the matter before us, on the other hand, the record concerning Debtor's duty, authority and control was comprised primarily of Debtor's testimony. The evidence established that Debtor had primary responsibility for making payments and chose to pay creditors other than the IRS.[11]

### Validity and Amount of Assessments

Debtor objects to the IRS's claim on the basis of the validity and amounts of the 1987 and 1990 assessments. The challenge to the validity of both assessments is based partially on the failure of the IRS to properly identify him as the responsible person. We have addressed that issue above and found it to be without merit. The other challenge is to the amount of the IRS's claim based on the failure of the IRS to assess against Debtor all amounts owing by Triad on the tax obligation for the periods to which the 1987 assessment relates (the third and fourth quarters of 1986 and the first quarter of 1987). Debtor contends that the secured claim is overstated by the unassessed amount. Debtor also attacks the 1990 assessment in light of the IRS's failure to produce a Form 23C in support of the assessment. We will address the amount of the 1987 assessment first.

### The Amount of the 1987 Assessment

■ Steven Bucci, a Revenue Officer/Advisor for the IRS Special Procedures Branch in Pittsburgh, Pennsylvania, testified that Government Exhibit A–2, Request for 100–Percent Penalty Assessment concerning the 1987 assessment, was prepared manually.

This exhibit lists the tax periods, the unpaid balance for the periods, and the trust fund portion of the outstanding balance that was assessed against Debtor. The amounts assessed against Triad were: (1) $10,282.55 for the third quarter of 1986, (2) $13,137.42 for the fourth quarter of 1986 and (3) $6,145.76 for the first quarter of 1987. The amounts for the fourth quarter of 1986 and the first quarter of 1987 are not in dispute. Bucci testified that no payments were made by Triad for the fourth quarter of 1986 and the first quarter of 1987. These amounts also were assessed against Debtor and he did not offer any evidence that he made payments for these quarters. Thus, for these two quarters, the liability assessed against Debtor totals $19,283.18.

■ The only dispute with respect to the 1987 assessment concerns the amount assessed against Debtor for the third quarter of 1986. Bucci testified that Triad's total liability for this period was $10,282.55 and that $141.43 of a payment of $5,018.90 was applied to the employee portion of the liability. Thus, Triad's liability for this period was reduced to $10,141.12. *See* Government Exhibit I. However, only $5,197.36 of this amount was assessed against Debtor. Bucci admitted on cross-examination that the statute of limitations has run with respect to this period and, therefore, the balance of $4,943.76 cannot be assessed against Debtor. A tax lien can be based only on the amount assessed.[12] Thus, the IRS's secured claim, to the extent that it includes the $10,141.12 assessed against Triad, must be reduced by $4,943.76, the difference between $10,141.12 and $5,197.36.

■ Because this is a 100 percent penalty case, however, the fact that an assessment was not valid does not negate Debtor's obligation to pay the unassessed portion of the

---

11. *DiStasio* is further distinguishable from the matter at bench in that the taxpayer in *DiStasio* had always relied on another to take care of the financial arrangements and had no reason to believe that his reliance was misplaced. He did not have access to the books and records which were kept under lock and key and, even if he had, he lacked the financial sophistication necessary to understand them. His efforts to hire an accountant to examine the books were thwarted.

No such circumstances exist in the case before us.

12. In order to have a valid lien, the IRS first must make a valid assessment, issue a notice of deficiency, and provide notice and a demand for payment. *See Brewer v. U.S.,* 764 F.Supp. 309 (S.D.N.Y.1991). Debtor has not alleged improper notice or demand.

tax. *Goldston v. U.S.*, 104 F.3d 1198 (10th Cir.1997). In *Goldston*, a tax assessment was made during the course of a chapter 11 bankruptcy without the benefit of an order granting relief from stay. The debtor was a responsible person for FICA and federal income taxes. The chapter 11 later was dismissed and the IRS filed a notice of federal tax lien. The debtor thereafter filed a chapter 13 and the IRS filed a secured claim based on its lien. The Court of Appeals held that the statutory obligation to pay a tax or tax penalty exists regardless of whether the assessment is void. The liability for the trust fund taxes arises when wages are paid and the federal income and social security taxes are withheld. *See Marvel v. U.S.*, 719 F.2d 1507, 1513–14 (10th Cir.1983) (taxpayer had actual notice that an assessment had been made; court held that there is no requirement in the Internal Revenue Code that notice of a deficiency or assessment be given before liability for employment taxes accrues); *Long v. Bacon*, 239 F.Supp. 911, 912 (S.D.Iowa 1965) (liability for payment of tax arises upon collection of the tax, not the date the statute requires that it be paid to the government). In light of the foregoing, we find that Debtor owes $10,141.12 for the third quarter of 1986. However, only $5,197.36 was assessed and is secured. The unassessed portion cannot be liened but is an allowed unsecured claim in the amount of $4,943.76.

### Debtor's Total Liability Pursuant to the 1987 Assessment

Based on the foregoing, we find that the amount assessed against Debtor in 1987 totaled $24,480.54 ($19,283.18 + $5,197.36). In its post-trial brief the IRS claims $20,197.54 as its secured claim for this period.[13] This lower amount represents the $24,480.54 assessed minus credits of $2,464.00, $185.00, and $1,634.00 (for a total of $4,283.00) from income tax refunds due Debtor that were set off. Debtor's unsecured liability for unassessed trust fund taxes pursuant to the 1987 penalty assessment is $4,943.76.

### The 1990 Assessment

We now address Debtor's challenge to the 1990 assessment. Debtor argues that because the IRS failed to produce an Assessment Certificate, Form 23C, which is a record of all assessments made on a particular day, the 1990 assessment is not valid. The Code of Federal Regulations provides, in relevant part, that:

> The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.... The date of the assessment is the date the summary record is signed by an assessment officer....

26 C.F.R. § 301.6203–1.

An accounting technician at the IRS's Philadelphia Service Center, Marilyn Riccio, testified to the process by which an assessment is made by her division. She testified that Form 2749 constitutes the request for a 100 percent penalty. *See* Government Exhibit B–2. *See also* Government Exhibit A–2. Form 2749 carries a document locator number which is an identification number for the assessment. Form 2859 is a summary of the information on Form 2749. *See* Government Exhibit A–2. Form 2859 is sent to the Philadelphia Service Center which then prepares a Form D813 (for billing) and Form 8166. *See* Government Exhibit A–3. Form 8166 lists all document locator numbers by tax class. This information is put into the tax certificate which carries the same document locator number. Then a Form 23C is prepared. It is a summary of all tax classes assessed that day and is the principal operating document used by the IRS to make an assessment. *See* Government Exhibit A–4. At trial, the IRS offered into evidence only Form 2749, Government Exhibit B–2. Ms. Riccio testified that she did not know if a summary record (Form 23C) exists regarding the 1990 as-

---

**13.** Debtor's Exhibit 3 is a Notice of Federal Tax Lien dated August 19, 1996, in the amount of $20,754.31. The discrepancy between Debtor's Exhibit 3 and the amount the IRS now contends is liened was not explained.

sessment because the collection branch, which also prepares assessments, generated the documents in this instance. She is not familiar with collection branch procedures and did not know if it would have issued a Form 23C.[14]

Debtor argues that, because the IRS failed to produce a Form 23C with respect to the 1990 assessment, the assessment is invalid. The IRS produced, however, a Certificate of Official Record, Form 2866, dated October 30, 1995, concerning the 1990 assessment. Government exhibit B-1. Attached thereto is a Certificate of Assessments and Payments, signed by an IRS officer, which includes a notation of the date the Form 23C was created. *See* Government Exhibit B-1. Debtor contends that, even if the Certificate of Official Record is an accurate reflection of the information on the assessment and of his liability as it existed in 1995, it is not accurate as of the date of the 1990 assessment. In *Huff v. U.S.*, 10 F.3d 1440 (9th Cir.1993), *cert. denied* 512 U.S. 1219, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994), the Court of Appeals for the Ninth Circuit held that the Certificate of Assessments and Payments constitutes presumptive evidence of a valid assessment if the assessment date (the "23C" date) is listed on the Certificate of Assessments and Payments. 10 F.3d at 1445–46. *Accord Jensen v. U.S.*, 59 F.3d 175, 1995 WL 377167 (9th Cir.1995) (unpublished); *Tweedy v. U.S.*, 26 F.3d 132, 1994 WL 245894 (9th Cir.1994); *Ghandour v. U.S.*, 37 Fed.Cl. 121 (1997).

In *Boch v. U.S.*, 154 B.R. 647 (Bankr. M.D.Pa.1993), the bankruptcy court noted that Certificates of Assessments and Payments, signed by IRS officer, are routinely used to establish that an assessment was made. The court held that the Certificate of Assessments and Payments constitutes presumptive proof of a valid assessment. 154 B.R. at 652, citing *Geiselman v. U.S.*, 961 F.2d 1, 5, 6 (1st Cir.), *cert. denied*, 506 U.S. 891, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992); *U.S. v. McCallum*, 970 F.2d 66, 68 (5th Cir.

1992); *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir.1992); *Gentry v. U.S.*, 962 F.2d 555, 558 (6th Cir.1992); *U.S. v. Chila*, 871 F.2d 1015, 1017–18 (11th Cir.), *cert. denied*, 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989).

In *Boch* the only challenge to the validity of the assessment was the absence of Form 23C. The court determined that, in the absence of any other ground upon which to base a challenge to the validity of the assessment, it was presumptively valid in light of the Certificate of Assessments and Payments signed by an IRS officer. In the matter before us Debtor asserts the additional basis of misidentification but, as discussed above, this argument is without merit. With respect to the 1990 assessment, the deposition testimony of Katherine Biros, as detailed above, established that his social security number and address were corrected before the 1990 assessment was made. The Certificate of Assessments and Payments lists the 23C date as October 29, 1990, the date of the 1990 assessment. It is signed by an IRS officer. We are constrained to find, as a matter of law, that Debtor has not overcome the presumption that a valid assessment was made on October 29, 1990.

### Amount of the 1990 Assessment

It is not clear whether Debtor is challenging the amount of the 1990 assessment. However, he objects to the IRS's claim and, to the extent that the objection to the claim includes the amount of the 1990 assessment, we address the issue. In this regard we credit the testimony of Special Procedures Branch Revenue Officer/Advisor Steven Bucci. Bucci examined Triad's tax liability as it relates to the 1990 assessment. He testified that Triad should have paid $6,254.16. *See* Government Exhibit I. He further testified that, of the $3,350.32 paid by Triad and applied by the IRS to its 1990 assessed obligation, only $999.16 was applied to the employee FICA tax identified on the 1990 assessment. This payment reduced the

---

14. The IRS also called Steven Bucci, a Revenue Officer/Advisor for the IRS Special Procedures Branch in Pittsburgh, Pennsylvania. He explained that Government Exhibit B-2, Request for 100-Percent Penalty assessment regarding the 1990 assessment, was generated by computer in the field branch office. The information was put into the computer by a clerk working from a Revenue Officer's worksheet. The witness could not explain the absence of a document locator number on Government Exhibit B-2 (Form 2749). He testified that the number on Form 2749 usually is inserted in the Service Center by an employee of the accounting branch.

trust fund amount due to $5,255. *See* Government Exhibit I. The 100 percent penalty assessed against Debtor, however, was in the amount of $6,092.09. The parties agree that this amount is incorrect and that the amount that Debtor should have been assessed is $5,255. An additional $14 lien fee was assessed against Debtor in 1994,[15] Government Exhibit B–1, bringing Debtor's total liability for the 1990 assessment to $5,269.

### Conclusion

Based on the foregoing, we find that Debtor's liability is as follows:

| | |
|---|---|
| 1987 assessed amount: | $20,197.54 |
| 1987 unassessed amount: | 4,943.76 |
| 1990 assessed amount: | 5,269.00 |

As a result, the IRS has secured claims of $20,197.54 and $5,269 and an unsecured claim of $4,943.76.

We further note that the IRS's proof of claim as amended can not be reconciled with the evidence adduced at trial as summarized herein. Therefore, the IRS must further amend its proof of claim.

An appropriate order will be entered.

---

**15.** The $14 lien fee was assessed against Triad in 1987. *See* Debtor's Exhibit 2.