**Maurice R. HUFF, Nancy Huff, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–15089.

United States Court of Appeals, Ninth Circuit.

Argued, Submission Deferred June 18, 1993.

Resubmitted Aug. 19, 1993.

Decided Nov. 26, 1993.

Maurice Huff and Nancy Huff, in pro. per.

Gary R. Allen and Kenneth L. Green, and David Pincus, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: FAIRCHILD *, BEEZER and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

The Huffs, pro se plaintiffs, filed a seven count complaint against the IRS. Counts I–III are best characterized as challenges to the procedural validity of tax liens under 28 U.S.C. § 2410. Count IV most resembles a request for a refund pursuant to 28 U.S.C. § 1346(a)(1). Counts V–VII seek damages for unauthorized disclosures of tax return information under 26 U.S.C. §§ 6103 and 7431(a). The district court granted summary judgment in favor of the IRS on all counts. We affirm in part and reverse in part.

## FACTS

In March, 1987, the IRS issued a Notice of Intention to Levy to Nancy Huff, claiming that she owed $25,904.53.[1] About a month later, the IRS filed a Notice of Federal Tax Lien against Mrs. Huff in Shasta County, California, stating that she owed $10,678.78. In addition, the IRS posted a warning notice on the Huffs' home, which indicated that the property had been seized for "non-payment of taxes." Roughly a week later, the IRS filed a Notice of Federal Tax Lien against Maurice Huff, which stated that he also owed $10,678.78. On the same date, Mr. Huff received a Notice of Intention to Levy, indicating that he owed $11,070.17. About two weeks later, the Huffs each received a Levy Notice and Notice of Seizure indicating that their home had been seized for past due taxes. The Huffs allege that prior to the events outlined above they received no notice

---

* Hon. Thomas E. Fairchild, Senior United States Circuit Judge for the 7th Circuit Court of Appeals, sitting by designation.

1. All "deficiency" amounts refer to the 1982 tax year, unless otherwise indicated.

of deficiency and that none was sent, and that they received no notice of assessment and demand for payment and that none was sent.

In June, 1987, Mr. Huff's employer received a Notice of Levy, stating that Mr. Huff owed $11,153.94. Immediately, Mr. Huff asked for and received a leave of absence from his job that lasted about a month. A week later the IRS issued a Release of Levy Notice to Mr. Huff's employer.

Plaintiffs allege that they entered into an oral agreement with the IRS at this point, the terms of which are not disclosed in the record, and began making $100 a month payments. These payments began in July, 1987, and continued until March, 1988.[2] However, in September, 1987, Mr. Huff's employer received a Notice of Levy, indicating that Mr. Huff owed $11,453.30. Two weeks later, the IRS issued a Release of Levy Notice to Huff's employer.

In November, 1987, the Huffs sought a home improvement loan. During the application process, the Huffs were informed that they could not get a loan until the tax liens were paid off. In an effort to escape the burden of the tax lien and further collection procedures, the Huffs arranged for the lender to pay off the tax lien with part of the money they received from the home improvement loan. Consequently, the Huffs' lender issued a check to the IRS for $25,285.51 in January, 1989.

Just over a year later, the IRS notified Mr. Huff that it intended to levy on his wages for a $904.03 deficiency in his 1984 and 1985 tax years. The next day the IRS issued a Release of Levy Notice. About a month later, the IRS sent a Notice of Levy to Mr. Huff's employer. A week later the IRS issued another Release of Levy Notice. In late August, 1990, the IRS issued a Notice of Levy to Mrs. Huff's employer, indicating that she owed $5,989.41 for the 1982 tax year. Two weeks later, the IRS sent Mrs. Huff's employer a Release of Levy Notice.

Eager to determine exactly what they owed the IRS, the Huffs requested copies of their records of assessment for the periods 1982–1986 in January, 1991. In response, they claim to have received an indecipherable document entitled "IMF MCC TRANSCRIPT—SPECIFIC," which did not contain the information required under 26 C.F.R. § 301.6203–1.

In June, 1991, the Huffs filed a complaint in federal district court. The complaint challenged the validity of the tax liens filed against the Huffs for deficiencies in the 1982 tax year, sought a refund of monies collected for the 1982 tax year, and stated three claims for unauthorized disclosure of return information. The district court granted summary judgment in favor of the IRS, and the Huffs appealed. On appeal, the Huffs renew the argument raised below that the attorney representing the United States was not authorized to do so. The record was unclear as to exactly what amounts, if any, the Huffs still owe the IRS. Accordingly, we ordered supplemental letter briefs on this issue, and the IRS has indicated that Mr. Huff owes nothing for the tax years 1982–1985 but that Mrs. Huff still owes $2,789.93 for the 1982 tax year.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *FDIC v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir.1992); *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir.1992). We review the record in the light most favorable to the Huffs to determine whether there is a genuine issue of material fact and whether the district court applied the substantive law correctly. *O'Melveny & Meyers*, 969 F.2d at 747; *Jones*, 968 F.2d at 940.

## DISCUSSION

### A. Authority to Represent the United States

First, the Huffs challenge the authority of John P. Pirkle, a trial attorney in the tax division of the Department of Justice, to represent the United States in this matter. The Huffs argue that only a United States Attorney can represent the United States in

---

**2.** The IRS contends and the Huffs do not dispute that no payment was made in January, 1988.

this case. However, 28 U.S.C. § 516 provides that "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested ... is reserved to officers of the Department of Justice...." *See also United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir.1990) (indicating that either the Department of Justice or United States Attorneys can represent the United States in litigation), *cert. denied*, 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). Moreover, § 517 states that "any officer of the Department of Justice ... may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States...." 28 U.S.C. § 517 (1988). While the Huffs contend that an issue of fact exists as to whether Mr. Pirkle was "sent" by the Attorney General, nothing in the record supports this contention.

In addition, the regulations promulgated under § 517 refute the Huffs' argument. Pursuant to the statutory authority granted the Attorney General to "send" an employee of the Department of Justice to attend to the interests of the United States, the Department of Justice, under the direction of the Attorney General, has promulgated regulations authorizing the tax division to represent the United States in various tax matters. *See* 28 C.F.R. § 0.70 (1992). Subsection (a) of § 0.70 indicates that the tax division conducts, handles, or supervises the "defense ... of civil suits, and the handling of other matters, arising under the internal revenue laws, and litigation resulting from the taxing provisions of other Federal statutes...." In addition to this broad grant of authority, the tax division is authorized to represent the United States in actions arising under 28 U.S.C. § 2410 "whenever the United States is named as a party to an action." *Id.* § 0.70(c)(2). Here, the Huffs brought an action under § 2410 and other provisions of

the Internal Revenue Code. Therefore, Mr. Pirkle, as an attorney in the tax division of Department of Justice, is authorized to represent the United States in this matter.

## B. Section 2410 Claims (Counts I–III)

Next, we review the district court's grant of summary judgment. Counts I–III of the complaint challenge the procedural validity of tax liens filed against the Huffs for deficiencies in the 1982 tax year. The Huffs allege that the government failed (I) to issue a notice of deficiency as required by 26 U.S.C. §§ 6212 and 6213(a), (II) to assess the Huffs in accordance with 26 U.S.C. § 6203, and (III) to issue a notice of assessment and demand for payment as required by 26 U.S.C. § 6303(a). The district court granted the IRS's motion for summary judgment on these counts, holding that counts I and II were barred because they challenged the merits of the assessment and thus could not be maintained under 28 U.S.C. § 2410. *See Elias v. Connett*, 908 F.2d 521, 527 (9th Cir.1990). As for count III, the district court held that the IRS Forms 4340 introduced by the government raised the presumption that the IRS had made the requisite demands for payment and that the Huffs had failed to rebut the presumption. We affirm the grant of summary judgment as to counts I and III, but reverse it as to count II.

On appeal, the government argues that the grant of summary judgment on all three counts is supported by the Huffs' failure to specify the precise "real or personal property on which the United States has or claims an interest" as required by § 2410(b). However, the Huffs have alleged that the IRS filed liens against their property located in Shasta County and that the IRS has levied on their wages several times. Viewing the record in the light most favorable to the Huffs, we find these allegations sufficient.[3]

---

**3.** While the Huffs cannot seek relief for monies or property already in the hands of the IRS in a § 2410 quiet title action, *see Farr v. United States*, 990 F.2d 451, 453 (9th Cir.1993), the IRS claims that Nancy Huff still owes $2,789.93 for the 1982 tax year. Moreover, the record does not indicate

that the liens filed against the Huffs in Shasta County have been released or discharged. Accordingly, the Huffs can maintain this action to quiet title to any property subject to the liens and to prevent further levy on their wages. *See Hughes*, 953 F.2d at 538.

*See Hughes v. United States,* 953 F.2d 531, 538 (9th Cir.1992) (indicating that a taxpayer can challenge the continued collection of taxes through garnishment of wages under § 2410). On the record before us, we simply cannot conclude that the IRS no longer claims a "challengeable" interest in the Huffs' wages or property subject to the lien.

▉ The district court correctly concluded that it had jurisdiction to hear counts I–III only if those claims can be construed as quiet title actions under 28 U.S.C. § 2410.[4] This court has indicated that § 2410 permits "quiet title actions challenging the procedural aspects of tax liens, but not the merits of the underlying tax assessments." *Arford v. United States,* 934 F.2d 229, 232 (9th Cir. 1991). We must decide then whether the allegations in counts I, II, and III of the Huffs' complaint allege procedural lapses in tax liens or challenge the merits of the underlying assessment.

### 1. Count I

▉ This court has held that claims that the IRS failed properly to notice deficiencies address the merits of an assessment and therefore are not actionable under § 2410. *See Elias,* 908 F.2d at 527. Thus, the United States has not waived its immunity to be sued on count I of the Huffs' complaint. Because the district court did not have jurisdiction over count I under § 2410, the court correctly granted summary judgment on that count. *See id.* at 527–28.

### 2. Counts II and III

▉ This court has held that claims regarding both the failure by the IRS properly to assess a tax and to provide a taxpayer with a copy of an assessment under § 6203, and the failure to send a notice of assessment and a demand for payment under § 6303(a) present procedural challenges to the validity of a lien and are therefore cognizable under § 2410. *See Arford,* 934 F.2d at 232; *Elias,* 908 F.2d at 527. Thus, the allegations of counts II and III will support an action under § 2410 unless the government can establish that there is no genuine issue of material fact as to whether the IRS complied with §§ 6203 & 6303(a).

### a. Section 6203

The district court ruled erroneously that count II did not present a procedural challenge to a tax lien. However, count II alleges that the IRS failed properly to assess taxes against the Huffs and that the IRS failed to respond to the Huffs' request for a copy of an assessment under § 6203. *See* 26 C.F.R. § 301.6203–1 (1992) (indicating that § 6203 requires the IRS to send the taxpayer "a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed" if the taxpayer makes a request for a copy of the assessment pursuant to § 6203).

Generally, courts have held that IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed under § 6203. *See Farr,* 990 F.2d at 454; *Geiselman v. United States,* 961 F.2d 1, 5–6 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992); *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir. 1991) ("Certificates of Assessments and Payments [are] routinely used to prove that a tax assessment has in fact been made."); *United States v. Chila,* 871 F.2d 1015, 1017–18 (11th Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989); *United States v. Miller,* 318 F.2d 637, 638–39 (7th Cir.1963). Here, however, the IRS seeks to rely solely

---

4. If the claims are not quiet title actions under § 2410, then the government has not waived its sovereign immunity. The Huffs argue in the alternative that the government has waived its immunity to this suit under 5 U.S.C. § 702. We hold, however, that § 702's waiver does not extend to this case. *See Hughes,* 953 F.2d at 537–

38. Section 702 does not permit parties to bring quiet title actions challenging the merits of an underlying tax assessment because such claims are impliedly barred by the limited waiver of § 2410. *See* 5 U.S.C. § 702 (1988); *see also Hughes,* 953 F.2d at 537.

on these forms to prove not only that an assessment had been validly made, but that the taxpayer had been provided with a copy of the assessment as per Treasury Regulation § 301.6203–1. We are unaware of any authority indicating that these forms standing alone constitute evidence for the latter proposition. Indeed, no entry on the form contains any information in this regard.

Moreover, in *Farr* this court ruled that Forms 4340 are merely presumptive, not conclusive, evidence that the IRS has complied with § 6203. *Farr*, 990 F.2d at 454. The court ruled that the fact that the taxpayer claimed not to have received certain notices precluded the court from granting judgment against the taxpayer in that case. *Id.* Here, the Huffs similarly claim that they never received any Form 4340 in response to their request for a copy of their assessments. While the government may have proved that Forms 4340 existed for the Huffs for the 1982 tax year, the record is devoid of any indication that the Huffs were provided with copies of these forms in response to their request for a copy of their assessments.

█ In addition, some of the Forms 4340 provided by the government to support the grant of summary judgment in this case appear defective. Courts have indicated that a Form 4340 is adequate to prove a valid assessment if it lists the "23C date," indicating the date on which the actual assessment was made.[5] *See Geiselman*, 961 F.2d at 5–6 (indicating that the government could prove a valid assessment by providing a Form 4340 instead of a Form 23C, the actual assessment forms, because the Form 4340 listed the 23C dates); *Brewer v. United States*, 764 F.Supp. 309, 315–16 (S.D.N.Y.1991) (holding that an issue of fact exists regarding the method of assessment when the IRS relies on Forms 4340 that do not list 23C dates). Here, the 4340 Form for Maurice Huff's 1982 tax year

did not list any 23C dates. Accordingly, we conclude that the IRS could not rely solely on those forms to prove that Mr. Huff's tax was validly assessed.

█ Given the defect in the Forms 4340 and the fact that the record contains no evidence indicating that the Huffs received copies of their assessments pursuant to their request under § 6203, we conclude there are genuine issues of material fact as to whether the IRS has complied with the requirements of § 6203. *See Farr*, 990 F.2d at 454; *Geiselman*, 961 F.2d at 5–6; *Brewer*, 764 F.Supp. at 315–16. Accordingly, we reverse the district court's grant of summary judgment as to count II.

### b. Section 6303

█ The district court also concluded that the Forms 4340 established that the IRS complied with the requirements of § 6303(a). We agree, at least in principle. *See infra.* This court has held that the precise forms used by the IRS in this case are sufficient evidence to support a grant of summary judgment on a claim that the IRS failed to issue a notice of assessment and demand for payment under § 6303(a). *See Hughes*, 953 F.2d at 538–40. Here, the Huffs' forms indicate that the appropriate notices were sent by the IRS, and the Huffs present no evidence suggesting that the information in the forms was inaccurate.

█ We affirm on count III with a reservation. Section 6303(a) requires that notice under that section be given within 60 days of the date of assessment. While Mr. Huff's Form 4340 indicates that he received notice on December 12, 1986, we cannot determine whether this was within 60 days of the assessment date because the 4340 Form does not list the 23C date. Accordingly, we affirm the district court's grant of summary judg-

---

5. "In practice, the IRS makes assessments by having an assessment officer fill out and sign a 'summary record of assessment,' also known as a Form 23C." *Geiselman*, 961 F.2d at 5. The 23C date on a Form 4340 indicates the date on which the Form 23C was signed, the date of the assess-

ment, and provides evidence that the tax was actually assessed by completing the Form 23C. Without a 23C date, the Form 4340 gives no indication as to whether the tax was actually assessed.

ment on count III with respect to Mrs. Huff and vacate the summary judgment on count III with respect to Mr. Huff, but ·permit reinstatement if the district court finds that Mr. Huff was validly assessed within 60 days prior to December 12, 1986.

## C. Refund Claim (Count IV)

■ The Huffs argue that the district court's grant of summary judgment on count IV was also erroneous. We disagree. The district court properly concluded that count IV was a claim for a tax refund pursuant to 28 U.S.C. § 1346(a). The court held that the Huffs failed to allege that they paid the full amount of the assessment as required by *Flora v. United States,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). The Huffs argue that this requirement should not apply in this case because they were never informed what the amount of the assessment for 1982 was. We need not resolve this issue because the record indicates that the Huffs failed to file a claim for a refund with the Secretary of the Treasury prior· to filing suit in the district court as required by 26 U.S.C. §§ 6532(a)(1) and 7422(a). Accordingly, we affirm the district court's grant of summary judgment on count IV.

## D. Disclosure of Return Information (Counts V–VII)

■ Counts V–VII of the Huffs' complaint allege that the IRS improperly disclosed return information in violation of 26 U.S.C. § 6103 in three notices of tax levy sent to the Huffs' employers between February and August, 1990. The district court granted the motion for summary judgment stating, "[t]he information was properly disclosed in connection with the IRS's collection activities."

To prevail on its motion for summary judgment, the IRS must establish either that the information contained in the notices of levy was not return information, *see Maisano v. United States,* 908 F.2d 408, 410 (9th Cir. 1990), or that the disclosures were authorized under 26 U.S.C. § 6103(k)(6) and Treasury Regulation § 301.6103(k)(6)–1(b)(6). The IRS does not argue that the information in the notices .was not confidential return information. Thus, the IRS is entitled to summary judgment only if the disclosures were authorized as a matter of law.

The Huffs contend that defects in the IRS's collection procedures underlying the levy notices subject the IRS to liability for the disclosure of return information despite the provisions of 26 U.S.C. § 6103(k)(6). This court has held to the contrary. *See Farr,* 990 F.2d at 455. In *Farr,* the court considered this precise question before us. The court concluded that even though the collection procedures at issue may have been defective, Farr could not bring an action under § 7431(a)(1) based upon information disclosed to Farr's employer in a levy notice. *Id.* The court held that the levy notices fell "squarely within the exemption under § 6103(k)" despite the possible procedural lapses involving the actual levy. *Id.* Accordingly, we affirm the district court's grant of summary judgment on counts V–VII.

AFFIRMED in part, REVERSED in part, and VACATED in part. Each party shall bear its own costs on appeal.