T.C. Summary Opinion 2004-44


UNITED STATES TAX COURT


JAMES DWAIN & JILL R. HAWS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19830-02S.                Filed April 6, 2004.


<u>Patrick D. Costello</u>, for petitioners.

<u>Kelley A. Blaine</u>, for respondent.


THORNTON, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463.[1]  The decision to be entered is not
reviewable by any other court, and this opinion should not be
cited as authority.  This case arises from a petition for
judicial review filed pursuant to section 6330(d).  The issue for

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended.

decision is whether the Appeals Office determination to proceed with a proposed levy should be sustained.

## Background

When petitioners filed their petition, they resided in Boise, Idaho. Petitioners are married and for all relevant years filed joint Federal income tax returns.

On October 24, 1999, petitioners filed an untimely 1992 joint Federal income tax return. They reported a $3,049.65 tax liability but did not include payment with their return.

On December 20, 1999, respondent assessed petitioners' reported 1992 tax liability (after allowing them a $452 earned income credit), plus a $584.47 addition to tax for late filing of their 1992 return, a $593.75 addition to tax for failing to pay tax, and $2,337.15 interest. On that same date, respondent issued to petitioners a statutory notice of balance due.

Petitioners also failed to pay taxes for their 1991, 1993, and 1994 tax years. The unpaid taxes for these years were the subject of a prior collection proceeding, culminating in a section 6330 Appeals Office hearing that occurred sometime in early 2000. On June 1, 2000, petitioners signed a Form 433-D, Installment Agreement (the installment agreement), prepared by Appeals Officer Bob Baker. The installment agreement states that it covers the tax years 1991, 1993, and 1994. Notwithstanding this statement, petitioners believed, on the basis of their

communications with Appeals Officer Baker, that it covered all years for which they owed tax, including 1992.

The installment agreement lists the "Amount owed" as $1,455 and states that petitioners agree to pay this amount, plus interest and penalties, in monthly installments of $125, commencing April 15, 2000, and continuing until the total liability is paid in full.[2]  Pursuant to this agreement, petitioners made the following payments, as reflected in respondent's transcripts of account:

| | |
|---|---|
| July 14, 2000 | $125 |
| Aug. 23, 2000 | 130 |
| Sept. 18, 2000 | 125 |
| Nov. 6, 2000 | 125 |
| Nov. 16, 2000 | 125 |

Respondent's transcripts of account reflect that the first three payments were credited against petitioners' 1991 tax liability, as was $9.42 of the November 6, 2000, payment, which apparently brought petitioners' 1991 balance to zero.  The $115.58 balance of the November 6, 2000, payment and the one

---

[2] The record does not reveal why the Form 433-D states that the first installment payment was due 2-1/2 months before petitioners signed the Form 433-D, Installment Agreement (the installment agreement).  We surmise that there was a delay between the preparation of the Form 433-D and petitioners' signing it.

subsequent $125 payment were credited against petitioners' 1992 tax liability.[3]

At some point, apparently after November 16, 2000, petitioners received notice from respondent of an unpaid 1992 tax liability that exceeded the amount indicated on the installment agreement. They made inquiries of Appeals Officer Baker, who advised them to make no more installment payments until he ascertained what had happened.[4]

On January 26, 2002, respondent issued to petitioners a notice of intent to levy with respect to their 1992 unpaid tax. On or about February 15, 2002, petitioners filed a Form 12153, Request for a Collection Due Process Hearing, signed only by Mr. Haws. On the Form 12153, Mr. Haws' explanation of his reasons for disagreeing with the proposed collection action states in its entirety: "I have paid taxes as agreed thru Appeals & Advocates Office".

---

[3] In respondent's transcripts of accounts, each of the five payments is described as a "Miscellaneous Payment". The only explicit references to the installment agreement in respondent's transcripts of accounts are identical entries for petitioners' 1992, 1993, and 1994 tax years, which simply state "Installment Agreement." These entries are dated Apr. 3, 2001--some 9 months after the installment agreement was executed and after petitioner had already made five payments pursuant to the installment agreement.

[4] The record does not reflect what further communications, if any, petitioners might have had with Appeals Officer Bob Baker.

On October 15, 2002, respondent's Settlement Officer Richard Stefanski conducted a telephone hearing with Mr. Haws with respect to petitioners' 1992 unpaid tax. In that hearing, Mr. Haws argued that the 1992 joint tax liability could be no greater than $1,455, the amount shown on the Form 433-D. Mr. Haws further argued that the $1,455 liability had been fully satisfied through various payments and overpayment credits. Settlement Officer Stefanski reviewed the administrative file and respondent's transcripts of petitioners' accounts and determined that the balance due for 1992 was greater than $1,455.

On November 20, 2002, the Appeals Office issued Mr. Haws a notice of determination sustaining the proposed levy for 1992. The Appeals Office determined that the 1992 liability was due and owing, that Mr. Haws had not shown or documented otherwise, and that "Without payment in full or in installments, or other resolution such as an offer in compromise or demonstration of financial hardship, Appeals must sustain the proposed levy." Attached to the Notice of Determination is Settlement Officer Stefanski's memorandum, which states in pertinent part:

> The current assessed balance due [for petitioners' 1992 tax year] stands at $1,828.37, and the balance due today, including penalty and interest accruals, stands at $2,640.00.
>
> Mr. Haws had previously entered into an installment agreement during a collection due process (CDP) hearing in 2001 in Boise, which included the 1992 period as well as other periods for which liabilities existed: 1990, 1991, 1993, and 1994. Though 1992 was not one of

the periods at issue in that hearing, it had to be included in the installment agreement since all periods have to be included in an agreement for approval of that agreement.

      \*     \*     \*     \*     \*     \*     \*

Mr. Haws insisted that the installment agreement was a binding contract for the amount of $1,455.00 only and that he should not have to pay more. I told Mr. Haws that what he was suggesting was an offer in compromise not an installment agreement since the balance due including penalty and interest was greater than $1,455.00.

      \*     \*     \*     \*     \*     \*     \*

I asked Mr. Haws if he wanted to submit an offer in compromise in the context of the CDP hearing or a financial statement to demonstrate financial hardship, but he said no, he wanted to go to tax court to contest the balance due instead.

On June 23, 2003, the trial was held in this case. On August 12, 2003, respondent filed a motion to dismiss Jill R. Haws for lack of jurisdiction, on the ground that no notice of determination was issued to her for 1992. On September 11, 2003, petitioners filed their memorandum in opposition to respondent's motion.

## Discussion

A. The Parties' Positions

Petitioners contend that when they entered into the installment agreement, Appeals Officer Baker had represented to Mr. Haws that it would cover all unpaid tax liabilities then outstanding, in accordance with what respondent admits to be established policy regarding installment agreements. Therefore,

petitioners argue, if the 1992 year was not included in the installment agreement, then it must be because their 1992 balance due was zero. Alternatively, petitioners contend that regardless of whether the 1992 tax year was included in the installment agreement, respondent should be equitably estopped from collecting from them more than the $1,455 listed on the Form 433-D.

Respondent's position is confused and inconstant. As previously noted, respondent's notice of determination expressly states that the installment agreement which petitioners signed on June 1, 2000, "included the 1992 period as well as other periods for which liabilities existed". In his trial memorandum, filed at trial, respondent argues that petitioners entered into an installment agreement with respect to the unpaid 1992 tax liability on April 3, 2001, and then failed to make any voluntary payments on the installment agreement. On opening posttrial brief, respondent contends ambivalently that "On April 3, 2001, an installment agreement between petitioner James Haws and the Service became effective, or was entered onto the Service's computer systems, for tax year 1992 in addition to the years affected by the prior CDP case."[5] On reply brief, respondent

_____

[5] This proposed finding of fact tracks the parties' stipulation number four, except for the final phrase "in addition to the years affected by the prior CDP case", which does not appear in the stipulation.

falls largely silent on this issue but seems to acknowledge that "not listing 1992 as a year covered in the installment agreement" might be regarded as an "isolated" act of "misconduct."

B.  Whether the Installment Agreement Included 1992

We first address respondent's sometime assertion that on April 3, 2001, petitioners entered into an installment agreement that covered their 1992 tax liability.  This position is inconsistent with respondent's sometime position that the 1992 tax year had to be included in the installment agreement which petitioners signed on June 1, 2000; moreover, there is no evidence to support it.  It is true that respondent's transcript of account for petitioners' 1992 tax year shows an entry dated April 3, 2001, stating without elaboration, "Installment Agreement".  But it is also true that petitioners' 1993 and 1994 transcripts of account show identical entries, also dated April 3, 2001.[6]  It seems most likely that all these

---

[6] The transcripts of petitioners' 1992, 1993, and 1994 accounts contain entries on Apr. 3, 2001, with a transaction code of 971 and an action code of 063, which indicate an approved installment agreement for that date.  See Internal Revenue Manual, sec. 5.14.1.3(2) (effective Oct. 18, 1999, to Mar. 30, 2002).  The Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 1992, 1993, and 1994, reflect a corresponding entry for an installment agreement for each taxable year.

It is unclear why the transcript of petitioners' 1991 account does not also show an entry for the installment agreement.  We surmise that this seeming omission might be due to the fact that petitioners' 1991 balance had been extinguished by

(continued...)

April 3, 2001, entries represent belated recordations of the June 1, 2000, installment agreement.

On the basis of the limited evidence in the record and respondent's failure adequately to explain his own administrative processes or even to maintain a consistent position with respect thereto, we conclude that petitioners and respondent mutually intended to include in the June 1, 2000, installment agreement all years, including 1992, as to which petitioners had unpaid tax liabilities. We further conclude that in drafting the installment agreement, respondent's employees or agents inadvertently omitted any reference to the 1992 tax year and also inadvertently omitted the corresponding amount of 1992 unpaid tax. We further conclude that, notwithstanding these erroneous omissions, respondent regarded the installment agreement as covering petitioners' 1992 tax year, as reflected by the April 3, 2001, entry on petitioners' transcript of account.

Consequently, we agree with petitioners that the installment agreement covered their 1992 year. As explained below, however, we disagree with petitioners that the installment agreement, by listing a total "amount owed" for all tax periods that was less than their unpaid 1992 tax liability, thereby abrogated or limited their obligation to pay their 1992 taxes.

---

[6](...continued)
Apr. 3, 2001, when the installment agreement was recorded for the other years.

C.  Effect of the Noninclusion of Petitioners' 1992 Taxes in the Installment Agreement

The parties agree that respondent's established policy is to include all balance due accounts in an installment agreement. Contrary to petitioners' assertion, however, it does not follow that noninclusion of a balance due for a particular year thereby eliminates it.  We have concluded that the noninclusion of the 1992 balance due was most likely a mistake.  Respondent's transcripts of petitioners' accounts, which are in evidence and which petitioners do not directly challenge, show that at all relevant times (including now) petitioners have had an outstanding unpaid balance for their 1992 tax year.  We are unconvinced that the appropriate remedy for respondent's ostensible mistake is to grant petitioners a windfall of a portion of their otherwise undisputed 1992 tax liability.

In this regard, we note that respondent is not authorized to compromise a liability except as provided in section 7122 regarding offers in compromise.  See Harbaugh v. Commissioner, T.C. Memo. 2003-316 ("It is well settled that section 7122 and the regulations thereunder provide the exclusive method of effectuating a valid compromise of assessed tax liabilities."). Unlike an offer in compromise, an installment agreement necessitates full payment of the tax liability involved without compromise.  See sec. 301.6159-1, Proced. & Admin. Regs. (providing that an installment agreement "allows the taxpayer to

satisfy a tax liability by making scheduled periodic payments until the liability is <u>fully</u> paid" (emphasis added)); Internal Revenue Manual, sec. 5.14.1.1 (effective Oct. 18, 1999, to Mar. 30, 2002); see also <u>Willis v. Commissioner</u>, T.C. Memo. 2003-302. In any event, petitioners make no claim, and the record provides no basis for concluding, that they entered into an offer in compromise with respondent.[7]

We are also unpersuaded by petitioners' contention that respondent should be equitably estopped from collecting more than the $1,455 shown on the Form 433-D. As a general matter, "the doctrine of equitable estoppel is applied against * * * [the Commissioner] 'with the utmost caution and restraint'". <u>Boulez v. Commissioner</u>, 76 T.C. 209, 214-215 (1981) (quoting <u>Estate of Emerson v. Commissioner</u>, 67 T.C. 612, 617-618 (1977)), affd. 810 F.2d 209 (D.C. Cir. 1987); see also <u>Kronish v. Commissioner</u>, 90 T.C. 684, 695 (1988). The Court of Appeals for the Ninth Circuit has held that before the Commissioner may be estopped from collecting taxes, the taxpayer must establish, in addition to the usual elements of estoppel, "'affirmative [mis]conduct going beyond mere negligence' and must also show 'that the government's act will cause a serious injustice and the imposition of estoppel

---

[7] After respondent informed petitioners that they owed additional amounts for 1992, petitioners submitted an offer in compromise offering to pay zero taxes consistent with the installment agreement. Respondent rejected petitioners' offer in compromise for a failure to submit sufficient information.

will not unduly harm the public interest.'" <u>Purcell v. United States</u>, 1 F.3d 932, 939 (9th Cir. 1993) (quoting <u>S & M Inv. Co. v. Tahoe Regl. Planning Agency</u>, 911 F.2d 324, 329 (9th Cir. 1990)). "Affirmative misconduct" requires ongoing active misrepresentations or a pervasive pattern of false promises, as opposed to an isolated act of providing misinformation. <u>Watkins v. United States Army</u>, 875 F.2d 699, 708 (9th Cir. 1989); <u>River City Ranches # 1 Ltd. v. Commissioner</u>, T.C. Memo. 2003-150.

In the instant case, we are unpersuaded that there was any affirmative misconduct on the part of respondent's employees or agents. At most, there appears to have been an isolated mistake in failing to list the 1992 tax year and include the unpaid 1992 tax liability on the Form 433-D. Petitioners do not assert, and there is no evidentiary basis for concluding, that any of respondent's employees or agents ever represented to petitioners that any of their unpaid tax liabilities, including their 1992 tax liabilities, would be compromised or eliminated pursuant to the installment agreement.[8]

Accordingly, we are unpersuaded that respondent should be estopped from collecting more than the $1,455 listed on the Form 433-D. Nevertheless, for the reasons described below, we do not

---

[8] The Form 433-D itself makes no such representation, as it omits mention of both the 1992 tax year and the unpaid 1992 tax liability.

sustain the Appeals Office determination that the proposed levy should proceed.

D. <u>Verification Requirement</u>

Under section 6330(c)(1), the Appeals officer is required to investigate and verify that the requirements of any applicable law or administrative procedure have been met.  Section 6330(c)(1) does not require the Commissioner to rely on a particular document to satisfy the verification requirement contained therein, and the Appeals officer may generally rely on transcripts of account, see <u>McIntosh v. Commissioner</u>, T.C. Memo. 2003-279, or Forms 4340, see <u>Lunsford v. Commissioner</u>, 117 T.C. 183, 187-188 (2001), to satisfy the verification requirement. See also <u>Kuglin v. Commissioner</u>, T.C. Memo. 2002-51.  If the transcripts of account or Forms 4340 reveal irregularities, however, further investigation is required.  See, e.g., <u>Huff v. United States</u>, 10 F.3d 1440, 1446 (9th Cir. 1993); <u>Lunsford v. Commissioner</u>, <u>supra</u>.

Settlement Officer Stefanski relied solely on transcripts of account to verify that the requirements of any applicable law or administrative procedure have been met.  These transcripts showed that an installment agreement was approved on April 3, 2001, for petitioners' 1992, 1993, and 1994 tax liabilities. Although Settlement Officer Stefanski acknowledged that the 1992 tax liability was included in the installment agreement, he

ultimately determined that this circumstance had no relevance in this collection proceeding because the installment agreement could not limit petitioners' 1992 tax liability to $1,455. Consequently, the Appeals Office sustained the proposed levy.

Pursuant to section 6331(k)(2)(C), however, no levy may be made with respect to any unpaid tax during the period that an installment agreement is in effect for payment of the tax. Consequently, Settlement Officer Stefanski (and we) having concluded that the installment agreement covered petitioners' 1992 tax year, the proposed levy action is inappropriate if the installment agreement is still in effect. There is no evidence in the record to suggest that it is not. By statute, respondent is required to give petitioners at least 30 days' notice before terminating the installment agreement. See sec. 6159(b)(5)(A). There is no suggestion in the record that respondent ever gave petitioners any such notice. Mr. Haws's unrefuted testimony is that he stopped making installment payments on the advice of Appeals Officer Baker, to await further deliberations by the Appeals Office and not because the installment agreement was terminated.

In these circumstances, we cannot agree that the Appeals Office properly verified that the requirements of applicable law or administrative procedure were met with respect to petitioners' 1992 tax liability. Insofar as the installment agreement is

still in effect, the proposed levy is barred by section 6331(k)(2)(C). Insofar as respondent has sought or seeks to terminate the installment agreement, there is no suggestion that the notice procedures of section 6159(b)(5) have been met. Consequently, on the instant record we conclude and hold that the Appeals Office has failed to verify that the requirements of any applicable law or administrative procedure have been met pursuant to section 6330(c)(1).

E.  Remand to Appeals Office

In appropriate circumstances, we may remand a section 6330 case to the Internal Revenue Service Appeals Office for further investigation and consideration of the taxpayer's arguments. See Keene v. Commissioner, 121 T.C. 8, 19 (2003); Lunsford v. Commissioner, 117 T.C. at 189; Harrell v. Commissioner, T.C. Memo. 2003-271. For the reasons discussed above, we remand this case to the Appeals Office for an additional hearing to further investigate and consider the effect of the installment agreement on the proposed levy. On remand, if it is determined that the installment agreement has not been terminated, petitioners should be given an opportunity to continue making payments under it to satisfy their unpaid 1992 liability and any remaining liability with respect to the other years covered by the installment agreement. Insofar as the interruption of petitioners' payments under the installment agreement may have resulted from incorrect

payout information contained on the Form 433-D or from their following the advice of respondent's employees or agents to discontinue their installment payments, the Appeals Office should consider whether it is appropriate to abate interest associated with such delay.  Cf. <u>Douponce v. Commissioner</u>, T.C. Memo. 1999-398.  In light of the confusion caused by respondent's errors in processing this case, petitioners should also be allowed to make, and the Appeals Office should consider, a new offer in compromise or a new installment agreement.

On remand, the Appeals Office should also determine whether Mrs. Haws should have been included in the notice of determination.  We point out that petitioners are joint filers, the levy is proposed for a joint tax liability, and respondent issued a notice of intent to levy addressed to both petitioners.  Also, the administrative record shows that throughout this proceeding respondent has addressed correspondence to both petitioners.  Further, there is no evidence that respondent contacted Mrs. Haws regarding her failure to sign Form 12153.  See 4 Administration, Internal Revenue Manual (CCH), sec. 8.7.2.3.3(3), at 27,277 (effective Nov. 13, 2001) (stating that Appeals should attempt to get written confirmation from a nonsigning spouse whether he or she also wishes a hearing).  Accordingly, we withhold action on respondent's motion to dismiss

for lack of jurisdiction as to Mrs. Haws to permit the record to be supplemented on remand.  In any event, we anticipate that Mrs. Haws will be treated in the same manner as Mr. Haws if any administrative resolution is reached in this case.

In light of the foregoing,

<u>An appropriate order will be issued</u>.