**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1368
_____

BURTON F. TUCKER,
                              Appellant

v.

COMMISSIONER INTERNAL REVENUE SERVICE
_____

On Appeal from the United States Tax Court
(Tax Court No. 4865-11 L)
Tax Court Judge:  Honorable Robert P. Ruwe
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 4, 2012
Before: SMITH, CHAGARES and WEIS, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  December 5, 2012 )
_____

OPINION
_____

PER CURIAM.

Burton Tucker, proceeding pro se, appeals a United States Tax Court order

granting the Internal Revenue Service's (IRS) motion for summary judgment and

allowing the IRS to proceed with a collection action.  We will affirm.

In 2008, Tucker filed delinquent tax returns for the years 2001 through 2004, but

1

he did not pay the liabilities owed on them. He received a "Final Notice of Intent to Levy" in February 2010, in response to which he invoked his right to a Collection Due Process (CDP) hearing.[1] See 26 U.S.C. § 6330(b). Tucker enumerated a number of grounds upon which the assessment process was allegedly flawed, based generally on procedural and regulatory violations by the agency; for example, he claimed that no "valid notice[]" of levies had been served upon him, that the tax sought to be collected was outside of the relevant limitations period, and that the failure to notify him within sixty days of the assessment process rendered "the entire IRS tax assessment and collection procedure a nullity." Tucker also asserted his belief that there were "no signed 4340 Form assessments" for the relevant period, based on the IRS's failure to provide him with signed copies of that form. Tucker elected to have his hearing held by correspondence; however, the record reflects that his subsequent communication with the agency was limited, as he sought to "challenge . . . the appropriateness of collection action and that administrative procedures have been met" but did not further elaborate

---

[1] A CDP hearing allows "a taxpayer to challenge the propriety of a pending tax lien or levy, to verify that a collection action against him is appropriate under the law, and to offer alternatives" to the proposed collection action. Tucker v. Comm'r, 676 F.3d 1129, 1131 (D.C. Cir. 2012) (no relation). A taxpayer may also, in certain circumstances, challenge the underlying tax liability itself. Id. CDP proceedings are generally informal, and may comprise "informal oral and written communications between the IRS and the taxpayer." Dalton v. Comm'r, 682 F.3d 149, 155 (1st Cir. 2012). At the end of the process, "the IRS is tasked with deciding whether it is reasonable to proceed with its intended collection action." Id.; see also 26 U.S.C § 6330(c)(3) (the proposed levy must "balance[] the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary").

upon the basis for his claims. Ultimately, the IRS issued a Notice of Determination concluding, essentially, that proper procedures were followed and that the "proposed levy [wa]s the appropriate action" to take.

Tucker sought review in the United States Tax Court, arguing again that IRS officers "ha[d] not followed their required procedures concerning income tax collection" and citing a substantially similar set of alleged agency missteps. The IRS moved for summary judgment, which Tucker did not affirmatively oppose. Observing that Tucker's "underlying liabilities [we]re not at issue," the Tax Court determined that:

> The record indicates that respondent's Appeals Office considered all of petitioner's contentions, verified compliance with all applicable laws and regulations, and considered whether the proposed collection actions balanced the need for efficient tax collection with petitioner's concern that they be no more intrusive than necessary. We conclude that the Appeals Office did not abuse its discretion in sustaining the levy, and, as a result, respondent may proceed with collection action as determined in the notice of determination upon which this case is based.

Tucker v. Comm'r, T.C. Memo. 2012-30, at *6, 8 (T.C. 2012). Tucker timely appealed.

We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1). "We exercise plenary review of the Tax Court's order granting the IRS'[s] summary judgment motion." Hartmann v. Comm'r, 638 F.3d 248, 249 (3d Cir. 2011). When, as here, the underlying tax liability is not in issue, the determination of the IRS Office of Appeals in a collection due process hearing is reviewed by both the Tax Court and the Court of Appeals for abuse of discretion. See Kindred v. Comm'r, 454 F.3d 688, 694 (7th Cir. 2006); Living Care Alternatives of Utica v. United States, 411 F.3d 621, 625 (6th Cir. 2005). Under

3

this deferential standard of review, which takes into account both the informal nature of CDP proceedings and their limited scope, we will "set aside determinations reached by the IRS during the CDP process only if they are unreasonable in light of the record compiled before the agency." Dalton, 682 F.3d at 154–55. Furthermore, judicial review extends only to those issues raised before the Office of Appeals. Giamelli v. Comm'r, 129 T.C. 107, 115 (T.C. 2007).

As a pro se appellant, Tucker is afforded liberal construction of his filings. Becker v. Comm'r, 751 F.2d 146, 149 (3d Cir. 1984). But the failure to raise an issue in an opening brief, even by pro se parties, renders it waived. Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 161 n.15 (3d Cir. 2010); Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam). Similarly, we will not review claims that are raised for the first time on appeal. Becker, 751 F.2d at 152 n.6.

Before this Court, Tucker argues one claim that he properly raised before both the agency and the Tax Court: he insists that deficiencies in the Form 4340s presented to him by the agency—specifically, their lack of signatures—rendered proceedings a nullity. His argument, however, appears to be premised on a misunderstanding of the relevant statutory and regulatory requirements. A tax assessment must be made "in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203. Under the promulgated regulations:

> The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the

liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer.

26 C.F.R. § 301.6203-1. Furthermore, if a taxpayer requests a copy of this record, he is to be "furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." Id.

Tucker's understandable confusion likely arises from the multiple, overlapping documents in play. The "Summary Record" to which the above regulation refers, and which must be signed and prepared in accordance with its requirements, is known as the Form 23C or (more recently) the Form RACS 006. See March v. IRS, 335 F.3d 1186, 1188 (10th Cir. 2003) ("Historically, the document reviewed and signed by the assessment officer has been Form 23C."). Form 4340, by contrast, is not the actual summary record of assessment, but instead "details the assessments made and the relevant date that a Summary Record of Assessment was executed." Id.; see also Perez v. United States, 312 F.3d 191, 193 (5th Cir. 2002) (distinguishing between Form 4340 and the RACS "Summary Record of Assessments"). Form 4030 is, in effect, a computer printout reflecting the current state of assessment. "[C]ourts have generally held that the IRS need not provide a taxpayer with a copy of the actual Summary Record of Assessment" to fulfill its obligations to the taxpayer but may instead send a Form 4340,

5

which "creates a presumption that a Summary Record of Assessment, whether on Form 23C or RACS Report 006, was validly executed and certified." March, 335 F.3d. at 1188–89; see also Gentry v. United States, 962 F.2d 555, 558 (6th Cir. 1992) ("Neither the Tax Code nor the Treasury Regulations require[s] those pertinent parts [furnished to the taxpayer] to be original documents, and the IRS has selected the certificate of assessments and payments as the means for providing the information specified."). There is no indication in the record that the forms provided to Tucker were actually defective or otherwise suspect—for example, by failing to identify the date of assessment. See Huff v. United States, 10 F.3d 1440, 1446 (9th Cir. 1993). To the extent that any signature was required on the Form 4340, see Taylor v. IRS, 69 F.3d 411, 419 (10th Cir. 1995),[2] the IRS introduced a signed, certified, and updated copy of the Form 4340 report in the proceedings before the Tax Court, and Tucker has not meaningfully challenged these exhibits nor explained how he was prejudiced by the initial, alleged deficiency. See Roberts v. Comm'r, 329 F.3d 1224, 1228 (11th Cir. 2003) ("[A] petitioner is not prejudiced by having received copies of the records of assessment only after the CDP hearing."). Thus, on the record before us and before the Tax Court, we conclude that the IRS did not abuse its discretion by determining that it complied with the relevant statutes and regulations; furthermore, its "subsidiary factual and legal determinations" appear to

---

[2] But see Stallard v. United States, 12 F.3d 489, 493–94 (5th Cir. 1994) (suggesting that the signing requirement of the regulations does not apply to a "supporting record"); Hovind v. Comm'r, T.C. Memo. 2006-143, at *13 (T.C. 2006) (collecting cases for the proposition that "[f]orms 4340 are not required to be signed").

be reasonable.  <u>Dalton</u>, 682 F.3d at 156.

Therefore, for the foregoing reasons, we will affirm the judgment of the Tax Court.