T.C. Memo. 2009-114


UNITED STATES TAX COURT


ROBERT E. CLAYTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7531-06L.              Filed May 26, 2009.


Robert E. Clayton, pro se.

<u>Jeremy L. McPherson</u>, for respondent.


MEMORANDUM OPINION


JACOBS, <u>Judge</u>:  The dispute between the parties concerns respondent's determination sustaining the filing of a lien to collect petitioner's unpaid Federal income taxes for 2000 and 2002.  The issue involved is whether, following a collection due process hearing pursuant to section 6320(b), that determination constituted an abuse of discretion.

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Trial of this case was held on December 10, 2008, in San Francisco. The record is muddled, largely because of petitioner's refusal to stipulate, his refusal to testify, and his flawed interpretation of the law. Nonetheless, on the basis of documents received into the record, as well as petitioner's remarks to the Court, we are able to find the following facts, which we deem sufficient to enable us to render an informed opinion.

At the time he filed his petition, petitioner resided in California.

On or about April 15, 2001, petitioner submitted to respondent Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for 2000. On this return petitioner listed his occupation as "Analyzer". He wrote "Exempt" on line 1 (total wages, salaries, and tips), line 7 (income tax withheld), and line 12 (amount you owe).

On or about April 15, 2003, petitioner submitted to respondent Form 1040A, U.S. Individual Income Tax Return, for 2002. On this return petitioner listed his occupation as "Christian missionary". He wrote "exempt" on lines 7, (Wages,

salaries, tips, etc.), lines 21 and 22 (adjusted gross income), and line 47 (amount you owe).

On or about April 13, 2004, petitioner submitted Form 1040X, Amended U.S. Individual Income Tax Return, for 2002 with a signed Form 1040A. On Form 1040A, line 12a (pensions and annuities) petitioner reported that he received $17,454, and on line 14a (social security benefits) he reported that he received $16,292. Petitioner claimed that neither of these payments was taxable income. On line 21 (adjusted gross income) petitioner entered $1,343, and on line 47 (amount you owe) he entered zero.

On February 17, 2003, respondent assessed "additional tax" for 2000 together with an accuracy-related penalty under section 6662 and statutory interest. On that same date respondent sent petitioner a notice of balance due; i.e., a notice and demand for payment within the meaning of section 6303. Petitioner did not pay the amount owed.

On June 5, 2003, petitioner entered into an installment agreement with respect to his unpaid taxes for 2000. On February 9, 2004, petitioner "withdrew" from the aforementioned installment agreement, stating that he had misunderstood the agreement. The record does not indicate whether petitioner made any payments in connection with this installment agreement.

On September 22, 2003, petitioner filed a petition in bankruptcy under chapter 7 of the Bankruptcy Code with the U.S.

Bankruptcy Court for the Eastern District of California
(Sacramento Division), and on December 29, 2003, he was granted a
discharge.  The record does not reveal whether respondent filed a
proof of claim in petitioner's bankruptcy proceeding.  Moreover,
if in fact respondent filed a proof of claim, the record does not
permit us to determine the disposition thereof.[1]

On April 28, 2004, respondent issued a notice of deficiency
for 2002.  Petitioner admits that he received it.  Petitioner did
not respond to the notice, and as a consequence, on September 27,
2004, respondent assessed against petitioner a deficiency in
income tax for 2002, as determined in the deficiency notice,
together with an accuracy-related penalty under section 6662 and
statutory interest.

Respondent's records indicate that a notice of deficiency
for 2000 was sent to petitioner at the last address known to
respondent.  Although respondent could not produce a copy of the
2000 deficiency notice sent to petitioner or a copy of a
certified mailing list, U.S. Postal Service Form 3877, or
equivalent, claiming that copies of these documents had been

---

[1]Petitioner contacted Senator Barbara Boxer's office,
apparently expressing his outrage that his tax liability for 2000
had not been abated as a consequence of his filing for
bankruptcy.  Senator Boxer's office forwarded petitioner's letter
to the Sacramento, California, office of the IRS Taxpayer
Advocate.  A Case Advocate was then assigned to petitioner's
case, and she determined that the tax for 2000 was not
dischargeable.

misplaced, respondent did provide a TXMOD transcript which from certain codes contained therein indicates that a notice of deficiency for 2000 had been mailed to petitioner and that petitioner defaulted; i.e., petitioner failed to file a petition in this Court contesting respondent's determinations for 2000.

On November 17, 2004, respondent sent petitioner written notice that respondent intended to levy on petitioner's assets to collect petitioner's unpaid tax liability for tax year 2000. Petitioner did not timely respond to that notice.

On July 15, 2005, respondent sent petitioner written notice that a lien had been filed with respect to his unpaid Federal income taxes for 2000 and 2002 as well as with respect to an assessed frivolous income tax return penalty under section 6702 for 2002. Petitioner was advised of his right to a hearing under section 6320 with respect to the filing of the lien. On August 1, 2005, petitioner filed Form 12153, Request for a Collection Due Process Hearing (section 6330 hearing), challenging both respondent's filing of the Federal tax lien and respondent's intent to levy. The form petitioner filed indicated that it related to years 2000, 2002, and 2003.[2]

During the ensuing months petitioner communicated with respondent's representatives by letter as well as by telephone

_____

[2]Neither tax year 2003 nor respondent's intent to levy to collect petitioner's unpaid 2000 tax is at issue herein. See infra.

to discuss his 2000 and 2002 tax liabilities.  On October 27, 2005, petitioner requested that his section 6330 hearing be suspended because he intended to file a motion in the U.S. Bankruptcy Court claiming IRS harassment and violation of his bankruptcy discharge.

Petitioner's case was assigned to Settlement Officer Martin Splinter of respondent's Appeals Office.  On December 22, 2005, Settlement Officer Splinter and petitioner held a section 6330 hearing via telephone.  During that hearing petitioner maintained that the payments he had received from the California Public Employees Retirement System (CalPERS) in 2000 and 2002, which gave rise to a substantial part of the tax deficiencies, were disability retirement benefits not subject to taxation. Petitioner also maintained that because he deposited these payments into a tax-free bond fund, the payments he received from CalPERS to fund the bond purchases were not taxable.  Finally, petitioner asserted that his 2000 and 2002 tax obligations were discharged in bankruptcy.

On January 11, 2006, petitioner received a letter from the CalPERS Benefit Services Division in response to his request that CalPERS classify the payments to him as tax exempt.  That letter stated that CalPERS could not comply with petitioner's request because the payments were considered pension or annuity payments which did not constitute tax-deferred payments under Federal law.

Petitioner failed to inform Settlement Officer Splinter of the CalPERS letter during their conversation held on February 27, 2006. Instead, petitioner stated he was still waiting for CalPERS to reclassify his payments as tax exempt.

On March 23, 2006, respondent's Appeals Office sent a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner concluding that the filing of the Federal tax lien against petitioner was both legally and procedurally correct. Attached to that notice was a report by Settlement Officer Splinter regarding petitioner's contention that the CalPERS payments were exempt from tax and that petitioner did not have any taxable income. Settlement Officer Splinter noted in his report:

> I discussed the case with my Team Manager and he clarified that the CalPERS payments were only tax exempt if they were paid to [petitioner] when he was out on disability. However once he became eligible for retirement the payments would not be tax exempt. I explained this to [petitioner] on Feb. 27, 2006. He said that he was out on disability and then became eligible for retirement, however the funds are deposited into a tax free bond fund and should still be considered exempt and he feels they should not be taxable.

> I again discussed the case with my Team Manager and he stated that the funds going into a tax free bond fund would be considered taxable. Any earnings from the fund would not be taxable but the monies used to fund the bond are taxable.

The notice of determination mentioned but did not discuss petitioner's bankruptcy discharge. Additionally, on March 23, 2006, respondent's Appeals Office sent petitioner a decision

letter, as opposed to a notice of determination, sustaining respondent's intent to collect petitioner's unpaid 2000 tax liability by levy. The decision letter noted that although petitioner's section 6330 hearing request was not timely filed, petitioner did receive a hearing equivalent to a section 6330 hearing. Petitioner was informed that he had no right to dispute in court the decision by respondent's Appeals Office sustaining respondent's proposed levy action.

On April 21, 2006, petitioner filed a petition in this Court challenging respondent's determinations. In his petition, petitioner wrote: "No tax liability! The IRS did not calculate my itemized deductions nor " [sic] additional two dependents."

On January 29, 2007, a hearing before Chief Special Trial Judge Peter J. Panuthos of this Court was held involving: (1) Petitioner's oral motion to withdraw his petition, (2) petitioner's oral motion to continue the case, (3) respondent's motion to dismiss on jurisdictional grounds petitioner's claims regarding (i) respondent's decision letter sustaining respondent's intent to collect petitioner's 2000 unpaid income tax liability by levy and (ii) sustaining the lien filed by respondent with respect to the section 6702 frivolous income tax return penalty for 2002, and (4) respondent's motion for summary judgment. At that hearing petitioner announced his intention to retain counsel. At the conclusion of the hearing Chief Special

Trial Judge Panuthos took each of the aforementioned motions under advisement except for petitioner's motion to continue the case, which was denied by Order dated January 29, 2007. By a second Order, dated March 13, 2007, Chief Special Trial Judge Panuthos dismissed for lack of jurisdiction petitioner's challenge regarding respondent's filing of a tax lien against petitioner with respect to the collection of the penalty under section 6702 as well as respondent's intent to levy on petitioner's property for his unpaid 2000 taxes.

On April 23, 2007, a hearing before Special Trial Judge Robert N. Armen, Jr., of this Court was held with regard to: (1) Petitioner's motion to withdraw his petition, and (2) respondent's motion for summary judgment. Petitioner repeated his prior stated intention to retain counsel and orally moved that he be allowed to withdraw his motion to withdraw his petition. In an Order dated April 23, 2007, Special Trial Judge Armen, among other things (1) denied respondent's motion for summary judgment without prejudice, (2) granted petitioner's oral motion to withdraw his motion to withdraw the petition, (3) remanded the case to respondent's Office of Appeals for consideration of: (i) The basis for the February 17, 2003, assessment with respect to tax year 2000, and (ii) the effect, if any, of petitioner's discharge in bankruptcy on petitioner's unpaid tax liabilities for 2000 and 2002, and (4) ordered

petitioner to file a response with the Court stating unequivocally: (i) Whether petitioner received, or did not receive, a notice of deficiency determining a deficiency and penalty in his Federal income tax for 2000, (ii) whether petitioner received, or did not receive, a notice of deficiency determining a deficiency in his Federal income tax for 2002, and, if petitioner admits that he did receive such a notice of deficiency for either or both of those years, (iii) why petitioner did not file a petition for redetermination of the deficiency and penalty with the Court. Special Trial Judge Armen's Order stated that if petitioner did not unequivocally answer the aforementioned questions, such failure would be deemed to be an admission that petitioner did receive notices of deficiency for those years.

On May 29, 2007, a representative of respondent and petitioner held a telephone supplemental section 6330 hearing. On August 15, 2007, respondent's Appeals Office issued a supplemental notice of determination, in which respondent determined that a notice of deficiency was properly mailed to petitioner for tax year 2000. The supplemental notice of determination stated that the TXMOD transcript shows that petitioner was issued a CP 2000 notice. The CP 2000 notice proposed changes to petitioner's 2000 income tax return and provided instructions regarding what petitioner should do if he

agreed or disagreed with the changes. Respondent's determination was based on transaction code 922 on the TXMOD transcript, which indicates a CP 2000 case. Moreover, the process codes on the TXMOD transcript included code 75, which indicates that a notice of deficiency for 2000 was issued, and code 90, which indicates that a deficiency for 2000 was assessed by default on February 17, 2003.

Respondent concluded that petitioner's bankruptcy filing did not affect petitioner's 2000 and 2002 Federal income tax liabilities. The attachment to the supplemental notice of determination stated that the Appeals settlement officer verified that the filing of the notice of Federal tax lien was in accordance with all legal and procedural requirements and that the requirement set forth in section 6330(c)(3)(C) that the filing of the tax lien "balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary" was satisfied.

Petitioner filed his report with the Court on August 16, 2007, stating:

> As to this Court's first 3-part question (1) Regarding tax year 2000, I do remember receiving some type of tax re-assessment from the IRS to which I immediately disputed and appealed through the IRS toll-free telephone system along with follow-up letters, previously submitted as exhibits in support thereof, in the instant case; and (2) Yes for 2002, I did receive that notice; and (3) I thought I had or did file for re-determination.

At the trial held on December 10, 2008, petitioner reiterated his desire to seek counsel. The trial was then recessed to permit petitioner to contact an attorney, but after a few minutes petitioner abandoned the effort. As stated supra p. 2, petitioner declined to testify despite several entreaties by the Court to do so.

## Discussion

### A. Standard of Review

The judicial review that we are required to conduct focuses on the determination made by respondent. Unless the underlying tax liability of the taxpayer in such a proceeding is properly at issue, we review the Commissioner's determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176 (2000). An abuse of discretion is defined as any action that is unreasonable, arbitrary or capricious, clearly unlawful, or lacking sound basis in fact or law. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

At the collection hearing a taxpayer may raise any relevant issues relating to the unpaid tax, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. In addition, he may challenge the existence or amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an

opportunity to dispute the liability.  Sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

In making a determination following a collection hearing, the Commissioner must consider:  (1) Whether the requirements of any applicable law or administrative procedure have been met, (2) any relevant issues raised by the taxpayer, and (3) whether the proposed collection action balances the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

B. Issuance of the Notices of Deficiency

The Commissioner must send a notice of deficiency to the taxpayer before he may assess, collect, or reduce to judgment most income tax liabilities.  United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984).  If no notice is sent and the period of limitations has passed, then assessment generally is barred.  See sec. 6501(a).  However, the notice need not be received by the taxpayer, so long as the notice is mailed to the taxpayer's last known address.  United States v. Zolla, supra.

A claim that an assessment is barred because no valid notice of deficiency was sent to the taxpayer is an affirmative defense under Rule 39.  See Robinson v. Commissioner, 57 T.C. 735 (1972). Such a claim must be set forth in the party's pleading, and a mere denial in a responsive pleading will not be sufficient to

raise the issue. Rule 39. The taxpayer has the burden of proof with respect to such a matter. Rule 142(a); see <u>Amesbury Apartments, Ltd. v. Commissioner</u>, 95 T.C. 227, 240 (1990). Petitioner failed to raise a claim that the assessments against him for tax years 2000 and/or 2002 are barred.

1. <u>2000</u>

Respondent did not present either a copy of the notice of deficiency for 2000 or the certified mail list. By Order dated April 23, 2007, the Court remanded this case to respondent's Appeals Office to determine whether the assessment for tax year 2000 against petitioner was valid. Complying with that Order, respondent reviewed the TXMOD transcript. The transcript showed that process codes 75 and 90 were entered, which as stated <u>supra</u> p. 11, indicate the issuance of a notice of deficiency for tax year 2000 (process code 75) and an assessment of the deficiency for tax year 2000 by default (process code 90).

In the April 23, 2007, Order, the Court mandated that petitioner file a status report in which he was to state, inter alia, whether he had received a notice of deficiency for tax year 2000. In doing so, we stated:

> petitioner has implied, if not tacitly admitted, that he
> received notices of deficiency for 2000 and 2002. However,
> in view of petitioner's patent unfamiliarity with tax
> practice and procedure, we shall require petitioner to
> unequivocally state whether he received, or whether he did
> not receive, (1) a notice of deficiency determining a
> deficiency and penalty in his Federal income tax for
> 2000 * * *.

Petitioner responded to the Court's mandate stating: "Regarding tax year 2000, I do remember receiving some type of tax re-assessment from the IRS to which I immediately disputed".  Thus, contrary to the Court's mandate, petitioner did not unequivocally state whether he did or did not receive a notice of deficiency determining a deficiency and penalty in his Federal income tax for 2000.

The Court's Order specifically stated:

> Petitioner's failure to unequivocally state, in a response to this Order filed on or before August 15, 2007, whether he received or whether he did not receive, notices of deficiency for 2000 and 2002 shall be deemed to be an admission that he <u>did</u> receive notices of deficiency for those years.

Because petitioner failed to unequivocally state that he did not receive a notice of deficiency for 2000, petitioner is deemed to have admitted that he did receive a notice of deficiency for that tax year.

Petitioner has not alleged any irregularity in the information contained in the TXMOD transcript.  And we have held that the Commissioner may rely on transcripts or other reports to satisfy the verification requirement imposed by section 6330(c)(1) that the requirements of any applicable law or administrative procedure have been met.  See <u>Davis v. Commissioner</u>, 115 T.C. 35, 41 (2000); <u>Schroeder v. Commissioner</u>, T.C. Memo. 2002-190; <u>Mann v. Commissioner</u>, T.C. Memo. 2002-48.

We are mindful of our holding in <u>Butti v. Commissioner</u>, T.C. Memo. 2008-82. In that case, the taxpayer stated that he had never received a notice of deficiency for the year at issue. Because the taxpayer affirmatively challenged the existence of the notice, we held that the Commissioner had to produce the notice of deficiency itself and could not rely on substitute methods of proof. The situation in the instant case is distinguishable from that in <u>Butti</u>. Petitioner was given multiple opportunities to challenge the existence of the notice of deficiency for tax year 2000, but in each instance petitioner failed to take advantage of the opportunity.

We thus find that the assessment against petitioner for tax year 2000 was proper and hold that petitioner may not challenge his underlying tax liability for that year.

2. <u>2002</u>

Respondent issued a notice of deficiency on April 28, 2004, for tax year 2002, and petitioner acknowledged that he received it. Therefore, the assessment against petitioner for tax year 2002 was proper, and we hold that petitioner may not challenge his underlying tax liability for 2002.

C. <u>Review of Respondent's Procedures for Abuse of Discretion</u>

On the basis of our conclusion that petitioner may not challenge the underlying tax liability for either 2000 or 2002, we review respondent's determination sustaining the filing of a

lien to collect petitioner's unpaid Federal income taxes for 2000 and 2002 for abuse of discretion. Petitioner argues that respondent abused his discretion in several ways. First, petitioner argues that respondent abused his discretion by:

> determining petitioner's tax returns 'frivolous,' without justification and without ascertaining the validity of petitioner's exempt income-tax-filing status (RE p. [sic] Nor has respondent made any effort to ascertain whether or not petitioner is exempt from income tax and in doing so has abused its discretion).

It is well established that arguing that an individual is exempt from income tax is frivolous and groundless. Accordingly, we do not find that respondent abused his discretion in rejecting petitioner's claim. See Homza v. Commissioner, T.C. Memo. 2008-174; George v. Commissioner, T.C. Memo. 2006-121; Wright v. Commissioner, T.C. Memo. 1990-232.

Next, petitioner argues that respondent did not allow him to present evidence that would prove he was exempt from tax. Petitioner asserts that respondent refused to wait for the response from CalPERS regarding whether the payments to petitioner were tax exempt before issuing the notice of determination. We find this argument to be without merit. First, State entities such as CalPERS cannot determine whether a payment is subject to Federal income tax. See Morgan v. Commissioner, 309 U.S. 78, 80-81 (1940). Second, CalPERS sent petitioner its response on January 11, 2006, but when Settlement Officer Splinter asked petitioner on February 27, 2006, whether

he had received the response, petitioner evasively replied that he was still waiting for it. Third, CalPERS's letter supports respondent's position, and not petitioner's position.

Finally, petitioner argues that respondent abused his discretion by not holding a face-to-face section 6330 hearing with petitioner. The record shows that petitioner was notified of his option to request a face-to-face hearing. However, there is no indication that petitioner ever requested a face-to-face conference before his section 6330 hearing occurred on December 22, 2005. Moreover, the record does not indicate that petitioner requested a face-to-face conference with respondent after this Court remanded the case to respondent's Appeals Office to consider the basis of the 2000 assessment against petitioner and the effect, if any, of petitioner's discharge in bankruptcy.

We have held repeatedly that because a hearing conducted under section 6330 is an informal proceeding instead of a formal adjudication, a face-to-face hearing is not mandatory. See Katz v. Commissioner, 115 T.C. 329, 337-338 (2000); Davis v. Commissioner, supra at 41. Accordingly, while a hearing may take the form of a face-to-face meeting, a proper section 6330 hearing may be conducted by telephone or by written correspondence. Katz v. Commissioner, supra; Connolly v. Commissioner, T.C. Memo. 2008-95; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.

We therefore do not find that the holding of the section 6330 hearings via telephone constituted an abuse of discretion.

D. Discharge in Bankruptcy

Petitioner argues that his tax liability was discharged by the U.S. Bankruptcy Court.  We remanded the case to respondent's Appeals Office, in part, to determine whether petitioner's tax liabilities were discharged.  In the supplemental notice of determination respondent determined that petitioner's tax liabilities were not discharged in bankruptcy.

This Court has jurisdiction to determine, in the context of a lien proceeding, whether a taxpayer's tax debts were discharged in bankruptcy.  See Washington v. Commissioner, 120 T.C. 114, 120-121 (2003).  An individual debtor is not to be discharged in a bankruptcy proceeding from certain specified categories of debt as provided in 11 U.S.C. section 523(a) (2006):

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (1) for a tax or a customs duty--
>
> (A) of the kind and for the periods specified in sections 707(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

Title 11 U.S.C. section 507(a)(8)(A)(i) refers to an income tax debt due and owing less than 3 years before the date of the filing of a bankruptcy petition as a priority tax debt. Petitioner's 2000 tax return was required to be filed by April

15, 2001.  Therefore, under the terms of 11 U.S.C. section 523(a)(1)(A), the tax on that year's return could only be discharged in a bankruptcy proceeding opened no earlier than April 15, 2004.

Petitioner's 2002 tax return was required to be filed by April 15, 2003.  Therefore, the tax on that year's return could only be discharged in a bankruptcy proceeding opened no earlier than April 15, 2006.

Petitioner filed for bankruptcy on September 22, 2003. Accordingly, neither petitioner's 2000 nor his 2002 tax liabilities were discharged in bankruptcy.

E. Conclusion

We hold that respondent did not abuse his discretion in sustaining the filing of a lien to collect petitioner's unpaid Federal income taxes for 2000 and 2002.

We have considered all of petitioner's arguments, and to the extent not discussed herein, we find them to be groundless, irrelevant, and/or without merit and thus unworthy of being addressed.

To reflect the foregoing,

Decision will be entered

for respondent.