T.C. Memo. 2013-268

UNITED STATES TAX COURT

WILLIAM B. MEYER, Petitioner <u>v</u>. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket No. 25013-06L.                    Filed November 25, 2013.

William B. Meyer, pro se.

<u>Paul C. Feinberg</u> and <u>Wesley J. Wong</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>: William Meyer failed to file a return or pay his 2000

taxes. The Commissioner figured out how much he owed and wants to collect by

levying on his property. Meyer got a collection due process (CDP) hearing, but

the Appeals officer upheld the Commissioner's decision to levy. Meyer argues

**[\*2]** that the Appeals officer abused his discretion by not properly verifying that the Commissioner followed applicable law or administrative procedure. The heart of Meyer's case is that the Commissioner either never created a notice of deficiency or never mailed it. If Meyer is right, the Commissioner has no right to collect the unpaid tax.

<u>Background</u>

Meyer has a history of run-ins with the Commissioner owing to his reluctance to follow the Internal Revenue Code when it comes time to file his annual return. See <u>Meyer v. Commissioner</u>, T.C. Memo. 2005-82, 2005 WL 826815, at \*3 ($15,000 penalty for filing a 1996 return showing zero income), <u>aff'd</u>, 200 Fed. Appx. 676 (9th Cir. 2006); <u>Meyer v. Commissioner</u>, T.C. Memo. 2005-81, 2005 WL 826676, at \*4 ($15,000 penalty for filing a 1997 return showing zero income). But for his 2000 tax year, Meyer decided not to file a return at all. Meyer told us at trial that he would not file a 2000 tax return unless he had a notice of deficiency and accompanying papers "to work from," because his records were "chaotic at best." The Commissioner believes Meyer earned more than more than $1 million in taxable income for 2000. The Commissioner

**[\*3]** prepared a substitute for return (SFR) under section 6020[1] and determined Meyer owed more than $450,000, plus interest and penalties.

This is common enough--preparing an SFR often prompts delinquent taxpayers to file a return on their own. An SFR is not a comprehensive return; the Commissioner uses only one of two filing statuses--single or married filing separately--and he allows only one personal exemption and no business expenses or itemized deductions. See Internal Revenue Manual (IRM) pt. 5.19.2.6.4.5.1(3) (Apr. 19, 2001). Because an SFR is usually stingy with deductions, a taxpayer who gets the resulting notice of deficiency will often respond by filing a petition with us and then preparing a return that reflects the much more complete information he has about himself--especially about greater deductions he is entitled to claim, the willingness of his wife to accept married-filing-jointly status, and whether he has children or other dependents.

This case may have wandered off the usual path right after the IRS prepared the SFR. What the IRS usually does next is draft a notice of deficiency for the unreported taxes and then mail that notice (which usually includes the SFR) to the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code for the year at issue; all Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] taxpayer.  The Commissioner generally has to do this before he can begin trying to collect.  And, in this case, that's what the Commissioner says he did--he claims that he sent Meyer a notice of deficiency, but Meyer never responded.  That would have allowed the Commissioner to record the liability--"assessing the deficiency" to use tax jargon--and to begin to collect the unpaid bill from Meyer.

I.    The CDP Hearing

The Commissioner did send Meyer a final notice of his intent to levy.  This notice told Meyer that he had the right to a hearing, which Meyer promptly demanded.

Even before that hearing, the Appeals officer requested a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, to verify that the Commissioner had properly assessed the tax.  The Form 4340 had an entry which indicated that a $465,390 tax had been "assessed by examination" and that there was an "audit deficiency per default of 90 day letter."  Although that form apparently satisfied the Appeals Officer that a notice of deficiency existed, he was unable to find a copy of the notice before the CDP hearing.

During the CDP hearing, the Appeals officer asked Meyer to point out any irregularities in the making of the assessment for 2000.  Meyer's primary

**[\*5]** contention was that he had not received a notice of deficiency.[2] Meyer indicated that he had repeatedly asked the IRS for a copy of the notice of deficiency, even filing a request under the Freedom of Information Act, but all to no avail. Because the Appeals officer still had not found the notice at the time of the hearing, he allowed Meyer to dispute his underlying tax liability.[3]

The CDP hearing, however, didn't resolve the notice-of-deficiency issue. The Appeals officer was clearly aware that if he did not get verification that the Commissioner properly mailed a notice of deficiency to Meyer's last known address, the assessment would be invalid; he wrote in his case activity record, "it is potentially possible that account will have to be abated & a new SNOD issued."

---

[2] Meyer also argued that the Commissioner violated his privacy under section 6103 because entries in the IRS records suggested his file had been sent to Baltimore for a Tax Court trial that both parties later agreed never occurred. Meyer believes the Commissioner violated his privacy by circulating his file throughout the IRS. We see no problem. See sec. 6103(h) (allowing for inspection or disclosure of tax records to Treasury officials, the Department of Justice, and for judicial and administrative proceedings for purposes of tax administration). Meyer had no evidence that the Commissioner released his file to people outside the IRS or used the file for nontax purposes in violation of section 6103.

[3] He seems to have had in mind section 6330(c)(2)(B), which allows a taxpayer who has not received a notice of deficiency to dispute the underlying liability at the CDP hearing.

**[*6]** To obtain this verification, the Appeals officer requested a copy of the certified mailing list (U.S. Postal Service Form 3877).

The Form 3877 in this case reads "statutory notices of deficiency for the year(s) indicated have been sent to the following taxpayers," and lists Meyer's name and address, followed by an article number and the phrase "postage fees paid by IRS 2000."[4]  The address listed on the  Form 3877 was (and remains) Meyer's correct address.  At the bottom right of the Form 3877, there are two separate items that contemplate completion of additional information:  One is a space for the USPS receiving employee to sign his name and the date; another is a space labeled "notices listed hereon were issued by:".  The only mark near those two items is a rectangular stamp which reads "IRS OGDEN UT USPS 84201" at the top, shows an illegible signature at the bottom, and the date April 2, 2003 in the middle.[5]  Additionally, although the Form 3877 indicates that the IRS was sending 12 pieces of certified mail, the space in which the USPS should have marked the number of pieces it received is blank.

---

[4] Although the form is titled "Substitute USPS Form 3877" and is not a certified copy, we will refer to the document as the Form 3877.

[5] In the Commissioner's briefs, he refers to this stamp as a "postmark".  As we discuss later, we make no determination whether this was in fact an official USPS postmark.

**[*7]**    After reviewing the Form 3877, the Appeals officer was apparently confident that he now had verified that a notice of deficiency existed and had been properly sent to Meyer; he wrote in his case activity record that the form "show[ed] the * * * [statutory notice of deficiency] went out on 4/2/03 to correct last known address."  Even after the hearing, however, the Appeals officer never received a copy of the notice of deficiency.  So far as the record shows, nobody at the IRS has ever found it.

II.    Notice of Determination

With the notice of deficiency issue seemingly resolved, the Appeals officer issued a notice of determination.  He determined that "[t]he Secretary has provided sufficient verification that the requirements of all applicable laws and administrative procedures have been met."  He noted that he "reviewed computer transcripts" to "verify[] the assessments."  And he specifically determined that the "assessment for the tax period of 2000 [was] valid"--because he found that the IRS had properly issued the deficiency notice and sent it to Meyer, "as shown on the United States Postal Service Form 3877, certified mail list, stamped by the United States Postal Service."   Because the requirements of all applicable laws or administrative procedures had been met--and because of Meyer's lack of

[*8] cooperation[6]--the Appeals officer determined that the levy balanced "the need for efficient collection with the taxpayer's concern that any collection action be no more intrusive than necessary."

Meyer, a resident of Nevada when he filed his petition, argues that this determination was an abuse of discretion, because the Appeals officer did not meet his obligation to verify that the IRS properly issued and mailed a notice of deficiency to him.

## Discussion

I. Liabilities, Deficiencies, and Assessments

We begin with some vocabulary: liability, deficiency, and assessment.

A tax liability is the tax imposed by the Code for a tax year. Sec. 26(b)(1). For an individual who correctly reports his taxes, the tax liability is the amount of tax shown on his return. For Meyer, who did not file a return, the liability is the amount that would have been shown on a correctly completed tax return. Individuals must pay their tax liability regardless of whether the Commissioner requests payment. Sec. 6151(a).

---

[6] The Appeals officer noted that Meyer refused to discuss collection alternatives that the Appeals officer had raised. And, somewhat redundantly, he also noted that Meyer wasn't eligible for any such alternatives because he hadn't filed his tax returns for later years.

[*9] A deficiency is generally the difference between the amount of a taxpayer's liability and the amount shown on his return--and when the Commissioner determines a deficiency, it means that he thinks a taxpayer owes more than was reported on the return. Sec. 6211. Section 6212 authorizes the Commissioner to send a notice of deficiency alerting a taxpayer that the Commissioner believes he owes more than he has reported. A taxpayer has 90 days from the date that notice was mailed to file a petition with this Court. Sec. 6213(a). Subject to exceptions not relevant here, the Commissioner may not assess, levy, or take other collection activity until 90 days after the notice of deficiency is mailed; if the taxpayer files a Tax Court petition, the Commissioner may not take action until our decision becomes final. Id.

An assessment is the recording of a tax liability in the Commissioner's books. Sec. 6203. Though nowadays it's just a computer entry, the act of assessment is immensely important because once a liability is assessed, the IRS can begin trying to collect it by means not usually available to ordinary creditors-- such as seizing a taxpayer's property without first going to court. See Bull v. United States, 295 U.S. 247, 260 (1935).

Within 60 days after making an assessment, the Commissioner must send a "notice and demand" for payment of tax under section 6303. A taxpayer's failure

[*10] to respond to a notice and demand creates a tax lien in favor of the Commissioner, allowing the Commissioner to levy. Sec. 6321. Before seizing a taxpayer's property, however, the Commissioner has to offer the taxpayer an opportunity for a CDP hearing with the IRS Appeals Office.[7] See sec. 6330(b), (e)(1). The Appeals officer provides a fresh set of eyes--he cannot have had any prior involvement with respect to the unpaid tax liability. See sec. 6330(b)(3). Meyer requested such a hearing.

As part of the CDP hearing, the Appeals officer must obtain verification that the requirements of any applicable law or administrative procedure have been met. See sec. 6330(c)(1). During the hearing, a taxpayer can try to forestall the unhappy outcome of having his property seized by arranging for alternatives like an offer-in-compromise or an installment agreement. See sec. 6330(c)(2)(A).[8] In

---

[7] In 1998, Congress enacted section 6330 to give taxpayers this opportunity to seek additional protections from unreasonable tax collection. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 3401, 112 Stat. at 746; Davis v. Commissioner, 115 T.C. 35, 37 (2000).

[8] Section 6330(c)(2)(B) also says that a taxpayer may challenge the underlying liability if he has not received a notice of deficiency, and we do review such a challenge *de novo* and not for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-82 (2000). This is undoubtedly the section that the Appeals officer had in mind when he invited Meyer to challenge the liability by filing his missing return. But this would have been an improper use of section 6330(c)(2)(B) if Meyer should have gotten a notice of deficiency and it turned out

(continued...)

[*11] summary, the IRS holds a CDP hearing only after the Commissioner has assessed a tax liability and tried to get the taxpayer to pay voluntarily.

Following a CDP hearing, the Appeals officer must determine whether to sustain the filing of the lien and whether proceeding with the proposed levy action is appropriate. In making that determination, the Appeals officer is required to consider three things:

- the verification from the Commissioner that he met all of the requirements of applicable law and administrative procedure,

- any relevant issues raised by the taxpayer, and

- whether the proposed collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern regarding the intrusiveness of the proposed collection action.

Sec. 6330(c)(3).

II.    Jurisdiction and Standard of Review

Section 6330(d)(1) gives us jurisdiction to review the determination made by the Appeals officer in connection with a CDP hearing. Where the validity of the underlying tax liability is not at issue, we review the Appeals officer's

---

[8](...continued)
that one wasn't properly issued--the correct action then would have been to find the levy improper, see Freije v. Commissioner, 125 T.C. 14, 35-36 (2005); and if Meyer did get a notice of deficiency, then his underlying liability would not have been properly before the Appeals officer and we could not review that part of the determination at all.

**[*12]** determination--including the verification that "the requirements of any applicable law or administrative procedure have been met"--for abuse of discretion.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000).  We review not only those issues that were considered by the Appeals officer but also issues that should have been considered by him in arriving at his determination--without regard to whether Meyer raised them at the hearing.  See Hoyle v. Commissioner, 131 T.C. 197, 202-03 (2008) (Hoyle I).  Because this case would ordinarily be appealable to the Ninth Circuit, we base our decision on the administrative record relied on by the Appeals officer during the CDP hearing.[9]  See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g T.C. Memo. 2006-166, and aff'g in part, vacating in part on another ground decisions in related cases.

---

[9] This rule has a few narrow exceptions "to identify and plug holes in the administrative record."  Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005).  We can supplement the administrative record (1) to determine whether the agency has considered all relevant factors and explained its decision; (2) "the agency has relied on documents not in the record; (3) when necessary to explain technical terms or complex subject matter; or (4) when there is a showing of agency bad faith.  Tri-Valley CAREs v. U.S. DOE, 671 F.3d 1113, 1130 (9th Cir. 2012); Lands Council, 395 F.3d at 1030.  We use the trial record in this case only to determine how the Appeals officer arrived at his decision and whether he considered all relevant factors.

**[\*13]** An Appeals officer abuses his discretion if his determination was grounded on an error of law or rested on a clearly erroneous assessment of the facts, or if he applied the correct law to facts that weren't clearly erroneous but ruled in an irrational manner. See Fargo v. Commissioner, 447 F.3d 706, 709 (9th Cir. 2006), aff'g T.C. Memo. 2004-13; United States v. Sherburne, 249 F.3d 1121, 1125-26 (9th Cir. 2001). "'[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Anderson v. Bessemer City, N.C., 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

III.    Forms in the Administrative Record

As part of his obligation under section 6330(c)(1), an Appeals officer must verify, among other requirements, that a notice of deficiency was properly issued to a taxpayer. Section 6330(c)(1) doesn't require any particular document or set of documents to satisfy this verification requirement. See Roberts v. Commissioner, 118 T.C. 365, 371 n.10 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2003); Kubon v. Commissioner, T.C. Memo. 2005-71, 2005 WL 752558, at \*4. When the existence of the notice of deficiency is in dispute, the Appeals officer must verify both that it exists and that it was properly mailed.

**[*14]** We turn to each of the two documents on which the Commissioner relies.

A.     Form 4340

We start with the Form 4340.  A Form 4340 provides a "detailed explanation of the taxpayer's account."  IRM pt. 5.4.2.15(3) (May 31, 2000).  An IRS employee compiles a Form 4340 from existing entries in the Commissioner's computer system, and enters "only valid assessments and adjustments, payments, or applied credits."  Id. pt. 5.4.2.15(3)(c)(1).  The Form 4340 should also reflect the first and last notice date as well as the certified mailing date of the deficiency notice.  Id.

A Form 4340 constitutes presumptive evidence that a tax has been validly assessed pursuant to section 6203.  Davis v. Commissioner, 115 T.C. 35, 40 (2000); Tucker v. Commissioner, T.C. Memo. 2012-30, 2012 WL 280357, at *3, aff'd, 506 Fed. Appx. 166 (3d Cir. 2012).  It is the taxpayer's burden to identify any irregularity.  Jordan v. Commissioner, T.C. Memo. 2011-243, 2011 WL 4596002, at *3 (citing Nestor v. Commissioner, 118 T.C. 162, 167 (2002)), supplementing 134 T.C. 1 (2010). And, unless he does so, a Form 4340 that shows that the tax liability was assessed and remains unpaid is sufficient verification. Davis, 115 T.C. at 40-41; Tucker, 2012 WL 280357, at *3.

**[\*15]** Here, however, Meyer plainly did identify an irregularity in the assessment procedure--he argued that he never received the notice of deficiency.[10]  See Hoyle v. Commissioner, 131 T.C. at 205 n.7 ("[W]here a taxpayer alleges no notice of deficiency was mailed he has * * * '[identified] an irregularity', thereby requiring the Appeals officer to do more than consult the computerized records" (quoting Chief Counsel Notice CC-2006-19 (Aug. 18, 2006))).  Thus, the Appeals officer could not rely on "computerized records" like the Form 4340.  Instead, we have said that "[t]he Appeals officer may be required 'to examine underlying documents

---

[10] The Commissioner argues that Meyer disputed only his receipt of the notice of deficiency, and not its existence, during the CDP hearing.  Thus, says the Commissioner, since the challenge to the existence of the notice is not part of the administrative record, it was never in dispute before the Appeals officer and we should not consider it.  We think that's splitting hairs a bit too fine--especially in a *pro se* setting.  As an initial matter, we think Meyer did put the existence of the notice at issue at the CDP hearing.  The declaration he gave to the Appeals officer at the CDP hearing says not only that he didn't receive a notice of deficiency, but also that he had been unable to obtain a copy from the IRS after several requests.  And that was on top of the fact that the Appeals officer himself was unable to find a copy of it.  Even if Meyer's declaration didn't say the magic word "existence", we have indicated that challenging receipt is also a challenge to a notice's existence.  See Clayton v. Commissioner, T.C. Memo. 2009-114, 2009 WL 1456471, at \*7 (citing Butti v. Commissioner, T.C. Memo. 2008-82, 2008 WL 898822, for the proposition that when "the taxpayer state[s] that he had never received a notice of deficiency for the year at issue * * * the taxpayer affirmatively challenge[s] the existence of the notice"); see also Internal Revenue Manual (IRM) pt. 8.22.2.2.4.7.1(4) (officer "*must* review" preassessment document, including, if possible, both notice of deficiency and certified mailing list when taxpayer denies receipt).

[*16] in addition to the tax transcripts, such as the taxpayer's return, a copy of the notice of deficiency, and the certified mailing list.'" Id. (quoting Chief Counsel Notice CC-2006-19). Therefore, the Appeals officer had a duty to dig deeper; at the very least, he had to examine other evidence to verify that the notice was properly mailed.[11]

### B. Form 3877

And the Appeals officer did begin to dig deeper when he requested the Form 3877 and reviewed it. The notice of determination indicates that the Appeals officer relied on that form alone to verify that the Commissioner had followed proper procedures in sending the notice of deficiency to Meyer. That finding formed the cornerstone of the Appeals officer's ultimate determination that the assessment was valid.

---

[11] Because Meyer put the existence of the notice of deficiency at issue, the Appeals officer also had a duty to verify that there really was a notice. It's unclear whether the Appeals officer relied on the Form 4340 to do this. It's also unclear whether an Appeals officer can rely on a Form 4340 to verify a notice's existence without actually finding other corroborating evidence. Cf. Butti, 2008 WL 898822, at *2-*4 (existence of notice in dispute). We think reliance on a Form 4340 may be even more suspect when it contains irregularities, as it did here. See infra note 15. But, as we conclude below (as we discuss later, we are remanding), it's not a question we have to answer here. On remand here, it might be helpful for an Appeals officer to clearly explain in the notice of determination what evidence he relied on to verify proper issuance.

**[*17]** The Form 3877 is central to this case. Although the Appeals officer did not review any evidence concerning how the Commissioner's personnel prepared and mailed notices of deficiency in this case, our caselaw has explained the general procedures. IRS employees who mail notices of deficiency are supposed to prepare a postal service Form 3877 (a certified mailing list) that lists all of the notices of deficiency mailed on a particular date. See Coleman v. Commissioner, 94 T.C. 82, 88 (1990). The IRS worker then is supposed to hand deliver the form and sealed envelopes containing the notices to the post office. See id. The postal worker is then supposed to enter the number of envelopes on the bottom of the form, initial the form, and stamp it with a postmark. See id.

In this case, Meyer challenges the Form 3877 on both procedural and substantive grounds. First, he contends that we should exclude it from the record. But even if we don't, he argues that the Appeals officer abused his discretion by relying on that form alone to verify that the notice of deficiency was properly mailed to him because he alleges that, like the Form 4340, it too contains numerous irregularities.

We look at each of those contentions.

**[\*18]**      i.      <u>Evidentiary Objections</u>

Before turning to Meyer's substantive challenge, we begin with his evidentiary objections. He asks us to exclude the Form 3877 because it is hearsay not falling within any exception and because it is not authenticated.[12]

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Because we base our decision on the administrative record relied on by the Appeals officer during the hearing, see <u>Keller</u>, 568 F.3d at 718, the Commissioner is offering the administrative record--and specifically the Form 3877--to demonstrate what documents the Appeals officer relied on, not to prove that the items in those documents are true, see <u>Hoyle v. Commissioner</u>, 136 T.C. 463, 468-69 (2011) (<u>Hoyle II</u>) (citing Fed. R. Evid. 105); <u>Bowman v. Commissioner</u>, T.C. Memo. 2007-114, 2007 WL 1296775, at \*6 n.6. The Form 3877 was presented as part of the administrative record; the fax information on the Form 3877 shows that the Appeals officer received the form before he made his determination. And the case activity record--as well as the

---

[12] Meyer also asks us to exclude the Form 3877 because it is not complete and because it does not satisfy the Commissioner's burden of proof. These two objections, however, go to the credibility and sufficiency of the evidence, rather than its admissibility, and therefore are not grounds for exclusion. Fed. R. Evid. 402.

[*19] notice of determination itself--indicate that he relied on it to make that determination. Subject to authentication, we find that it is admissible for the purpose of proving that it was part of the administrative record. See Hoyle II, 136 T.C. at 468-69.

Even if admissible for that purpose, the Form 3877 still must be authenticated before we admit it into evidence. See Fed. R. Evid. 901. "[E]vidence sufficient to support a finding that the item is what the proponent claims" will authenticate an item presented as evidence. Id. 901(a). An item may be authenticated by a witness with knowledge who testifies that the item is what it is claimed to be. Id. (b)(1). When we are reviewing a notice of determination in a CDP case, the Commissioner presents the administrative record to show what items the Appeals officer relied on in making his determination. Therefore, the Appeals officer's testimony at trial that he relied on the Form 3877 presented in this case is sufficient to authenticate it as part of the administrative record.

The fundamental problem underlying Meyer's evidentiary arguments is that he presumes each piece of the administrative record must be admissible at trial independent of its role as part of the administrative record; i.e., he seems to argue that the Form 3877 must satisfy evidentiary rules in this case in the same way it would have to satisfy evidentiary rules in a deficiency case or any other federal

[*20] litigation, where it would be a stand-alone document to prove only that a notice of deficiency had been mailed. The Court of Federal Claims dispatched a similar argument in a challenge to more formal charitable-exemption-denial hearings, saying:

> Of course, if plaintiff is right, the IRS would be obliged to apply * * * evidence rules derivatively, lest this court strike materials that it relied upon in denying an exemption. * * * But, contrary to plaintiff's importunings, courts generally have refused to consider collateral attacks upon the materials in administrative records based upon the *post hoc* application of evidence rules. * * *

New Dynamics Found. v. United States, 70 Fed. Cl. 782, 797 (2006). We ourselves have indicated that items in an administrative record need not be independently admissible. See Hoyle II, 136 T.C. at 468-69. If they needed to be independently admissible, then the Appeals officer would abuse his discretion if he relied on any document that would not be admissible in a deficiency case. This would effectively merge deficiency law and CDP law, a result that we reject.

ii.     Use of Form 3877 to Verify Mailing

That brings us to the meat of Meyer's case--did the IRS properly mail the notice of deficiency before assessing his 2000 tax liability? If not, Meyer wins, because we have definitively held that the Commissioner may not use a CDP hearing to "cure" his failure to properly assess a tax. Freije v. Commissioner, 125

**[\*21]** T.C. 14, 35 (2005).  The Commissioner had to mail a notice of deficiency to Meyer's last known address 90 days before he assessed Meyer's debt, or that assessment would be invalid.  Sec. 6213(a).

In deficiency cases, we have held the Commissioner has the initial burden of proving by competent and persuasive evidence that a notice of deficiency was properly mailed to a taxpayer.  Clough v. Commissioner, 119 T.C. 183, 187 (2002); Cataldo v. Commissioner, 60 T.C. 522, 524 (1973), aff'd per curiam, 499 F.2d 550 (2d Cir. 1974).  We have also required the Commissioner in deficiency cases to show that the notice of deficiency was properly delivered to the USPS for mailing.  Clough, 119 T.C. at 187; Coleman, 94 T.C. at 90.  In those cases, we have said that the act of mailing may be proven by evidence of the Commissioner's mailing process corroborated by direct testimony or documentary evidence.  Clough, 119 T.C. at 187; Coleman, 94 T.C. at 90.  When the existence of a notice of deficiency is not disputed, we have ruled that a properly completed Form 3877 by itself is sufficient--absent evidence to the contrary--to establish that the notice of deficiency was properly mailed to the taxpayer.  Coleman, 94 T.C. at 91.  (More specifically, we have held that "exact compliance" with Form 3877 mailing procedures raises a presumption of official regularity in favor of the

**[\*22]** Commissioner. <u>Clough</u>, 119 T.C. at 188, <u>Coleman</u>, 94 T.C. at 90, 91; <u>see also</u> <u>United States v. Zolla</u>, 724 F.2d 808, 810 (9th Cir. 1984).)

Although this is not a deficiency case, we have applied these same principles in a CDP setting. <u>See</u> <u>Butti v. Commissioner</u>, T.C. Memo. 2008-82, 2008 WL 898822, at \*3 (burden on Commissioner) (citing to <u>Coleman</u>, 94 T.C. at 90--without discussing different standard of review in CDP cases--for proposition that the Commissioner "bears burden of proving by competent and persuasive evidence that the notice of deficiency was properly mailed"); <u>Hoyle I</u>, 131 T.C. at 203 (need for exact compliance) (noting that "[w]e have held that exact compliance with Postal Service Form 3877 mailing procedures raises a presumption of official regularity in favor of the Commissioner and is sufficient, absent evidence to the contrary, to establish that the notice was properly mailed"). In <u>Hoyle I</u>, 131 T.C. at 203--where the existence of a notice of deficiency was not in dispute--we said that "it may be true that an Appeals officer could rely on a properly completed Postal Service Form 3877 to meet his verification obligation under section 6330(c)(1)." <u>Hoyle I</u>, 131 T.C. at 203.

When the existence of a notice is not in dispute, an Appeals officer may rely on a properly completed Form 3877 to meet section 6330(c)(1)'s requirement that he verify proper mailing. <u>See</u> <u>id.</u> And here, unlike <u>Hoyle I</u>, we know that the

[*23] Appeals officer did rely on the Form 3877 to do so.[13]  Before relying on it, though, an Appeals officer must assure himself that the form is "properly completed."  Thus, we look at whether the Form 3877 here was indeed "properly completed," see Hoyle I, 131 T.C. at 203; or in other words, whether there was "exact compliance" with the certified-mail-list procedures, see Clough, 119 T.C. at 188, Coleman, 94 T.C. at 91.

We're far from confident that the IRS properly completed the Form 3877 in this case.  The first issue that jumps out at us--specifically on the bottom right-hand side of the form--is the rectangular stamp that reads "IRS OGDEN UT USPS 84201" which purportedly is an official USPS postmark, and includes an illegible signature.  Although it is generally well known that a USPS hand-stamped postmark is round and doesn't have an IRS identification, see, e.g., USPS Postal Operations Manual, at ex. 231.5 (July 2002), available at http://www.nalc.org/depart/cau/pdf/manuals/POM/POM_9--12_08.pdf (listing

---

[13] Because the administrative record in Hoyle I didn't contain a Form 3877, we determined that "the Appeals officer could not have based his verification on that form."  Hoyle I, 131 T.C. at 203.  And since it was unclear what the Appeals officer used to verify that the assessment of the taxpayer's liability was preceded by a duly mailed notice of deficiency, we remanded the case to the Appeals Office "for it to clarify the record as to what the Appeals officer relied upon in determining that the notice of deficiency was properly sent to" the taxpayer.  Id. at 204-05.

**[\*24]** hand-stamped postmarks); International Mail Manual, at 311.1, <u>available at</u> http://pe.usps.com/text/imm/immc3_001.htm (specifying USPS postmarks are round), our caselaw is not so sure, <u>compare</u> <u>Coleman</u>, 94 T.C. at 85 (distinguishing between round postal service stamp and IRS dating stamp on a Form 3877) <u>with</u> <u>Clough</u>, 119 T.C. at 185-86 (finding rectangular "postmark" with "IRS OGDEN UT USPS-84201" was valid USPS postmark based on declaration of USPS mail processing clerk).  Unlike what the Commissioner did in <u>Clough</u>, the Appeals officer here didn't bother to obtain a declaration from anyone regarding the validity of the only stamp on the form.

Even assuming that this stamp is an official USPS postmark and includes a signature of the postal employee who received the notices, other red flags are fluttering.  The Form 3877 also requires a signature of the person who issued the notices.  Assuming the signature was that of the postal office employee who received the notices, no separate signature from the person who issued the notices was present here.  Additionally, even though the Form 3877 indicated that the IRS was sending 12 pieces of certified mail, the space in which the USPS should have marked the number of pieces it received to confirm that fact is blank.  <u>See, e.g.</u>, USPS Registered Mail Handbook DM-901, at 3-4.2.1 (Sept. 2004), <u>available at</u> http://www.nalc.org/depart/cau/pdf/manuals/dm901.pdf (instructing USPS

[*25] employee to enter total pieces received to properly complete a Form 3877);

see also IRM pt. 4.14.1.9.3(2) (July 21, 2000) (USPS employee will verify number

of notices before completing Form 3877). The Appeals officer did find that the

Form 3877 was "stamped by the Postal Service," but did not discuss any of the

other missing items. By relying only on the Form 3877 to verify that the IRS

properly mailed the notice of deficiency, the Appeals officer implicitly found that

it was properly completed. And that finding borders on being clearly erroneous.

We don't think that the Appeals officer could have relied on that form alone to

verify that the notice of deficiency was properly sent. See Coleman, 94 T.C. at 91

("[A] defective Form 3877 corroborated by other documentary evidence does not

entitle respondent to the presumption of official regularity").

That's not necessarily the end of the story. In deficiency cases, we have

acknowledged that a failure to precisely comply with the Form 3877 mailing

procedures may not be fatal if the Commissioner can come forward with other

evidence that the mailing procedures were followed. See Clough, 119 T.C. at 188;

Coleman, 94 T.C. at 91-92. Likewise, in a CDP case we want to stress that an

Appeals Officer's reliance on a defective Form 3877 to verify that the IRS had

fulfilled its requirements to mail out a notice of deficiency is not an abuse of

discretion *per se*--if the administrative record shows that he relied on other

[*26] evidence that corrects or explains the defects, he could meet his verification

obligation regarding the mailing issue.

That's not what happened here, though. The administrative record in this

case does not show that the Appeals officer relied on anything else to verify proper

mailing. After Meyer argued at the CDP hearing that he didn't receive a notice of

deficiency--with the Appeals officer's acknowledging that "it is potentially

possible that" the lack of a notice of deficiency would result in the abatement of

the assessment--the Form 3877 is the only piece of evidence in the administrative

record that the Appeals officer relied on to verify that the notice of deficiency was

properly mailed.[14] The Appeals officer could've sought a declaration or some

other kind of verification from an IRS employee involved in preparing the Form

---

[14] At trial, Meyer pointed out that the Appeals officer couldn't also rely on the Form 4340 to verify proper mailing because it contained no entry for the certified mailing date of the notice of deficiency. And it's true that his Form 4340 didn't contain such a date--as it should have. See IRM pt. 5.4.2.15(3)(c)(1) (May 31, 2000) (directing that the Form 4340 must "[c]learly show the first and last notice date and the certified mailing date of the deficiency notice"). However, nothing in the administrative record indicates that the Appeals officer actually relied on the Form 4340 to verify that the notice of deficiency was properly *mailed*. Before the CDP hearing--before he knew that the mailing of the notice of deficiency might be an issue--the Appeals officer requested the Form 4340 to see if that form could help him verify that the assessment was proper. Once he realized there might be a problem with the mailing, there's no evidence in the administrative record that he relied on that form to verify that the notice of deficiency was, in fact, properly mailed.

**[*27]** 3877 (or, if there was one, the USPS employee signing off on that form),

e.g., Clough, 119 T.C. at 186, or obtained other habit or documentary evidence,

e.g., Coleman, 94 T.C. at 92, to verify proper mailing. The administrative record,

however, doesn't indicate he sought any of these alternatives. And, under the

Chenery doctrine, we "must judge the propriety of * * * [an administrative

agency] action solely by the grounds invoked by the agency." SEC v. Chenery

Corp., 332 U.S. 194, 196 (1947) (describing its holding in SEC v. Chenery Corp.,

318 U.S. 80 (1943)); see also Jones v. Commissioner, T.C. Memo. 2012-274, at

*15 (applying Chenery doctrine to CDP case); Salahuddin v. Commissioner, T.C.

Memo. 2012-141, 2012 WL 1758628, at *7 (same).

So, that leads us to the ultimate question: Should we determine that the

Appeals officer abused his discretion or remand to the Appeals Office to allow the

officer to clarify the evidence that he did rely on--or even supplement the

administrative record to meet his verification obligation? In other words, should

we hold that the Appeals officer's determination rested on a clearly erroneous

finding of fact, or remand to the Appeals office to allow the officer to clarify the

evidence that he did rely on--or even supplement the administrative record to meet

his verification obligation?

**[\*28]**   Generally speaking, we remand a case to the Appeals Office when a taxpayer did not receive a proper hearing and the new hearing is necessary or will be productive.  Kelby v. Commissioner, 130 T.C. 79, 86 n. 4 (2008) (citing Lunsford v. Commissioner, 117 T.C. 183, 189 (2001), Lites v. Commissioner, T.C. Memo. 2005-206, 2005 WL 2082796, at \*8, and Day v. Commissioner, T.C. Memo. 2004-30, 2004 WL 213726, at \*3).   The resulting section 6330 hearing on remand is not a new hearing, but rather "'provides the parties with the opportunity to complete the initial section 6330 hearing while preserving the taxpayer's right to receive judicial review of the ultimate administrative determination.'"  Id. at 86 (quoting Drake v. Commissioner, T.C. Memo. 2006-151, aff'd, 511 F.3d 65 (1st Cir. 2007).  As noted earlier, we have remanded a case to the Appeals Office to clarify the record regarding an officer's determination that a notice of deficiency was properly mailed.  See Hoyle I, 131 T.C. at 205.

Although a close call, we decide that the most productive course here would be to remand to the Appeals Office.  We acknowledge that the administrative record does not show that the Appeals officer pursued additional evidence to verify that the notice was properly mailed.  We also must recognize, however, that--at the time of his decision--the Appeals officer here did not have the benefit of several decisions from this Court that could have affected his understanding of

**[\*29]** the verification obligation. For instance, he may not have known that when a taxpayer challenges receipt of a notice of deficiency, that should also be construed as a challenge to a notice's existence, see Clayton v. Commissioner, T.C. Memo. 2009-114, 2009 WL 1456471, at \*7, and therefore the Appeals officer might have thought it proper to rely solely on the Form 4340 to verify a notice's issuance (and possibly even rely on it in conjunction with a Form 3877 to verify proper mailing). The Appeals officer also didn't have the benefit of Hoyle I, 131 T.C. at 202-03, so he might not have known that we can review all issues that he should have considered, without regard to whether a taxpayer raised them at the hearing.[15] Furthermore, the Appeals officer did not know for sure that the burden of proof for mailing that had been espoused in deficiency cases would also apply equally in CDP cases despite the differing standards of review. See Butti, 2008 WL 898822, at \*3 (burden on Commissioner to prove by competent and persuasive evidence that notice of deficiency was properly mailed).

We have remanded cases where the law changed between the CDP hearing and the Tax Court trial if that may have affected presentation of a case. See

---

[15] Hoyle I, 131 T.C. at 205 n.7, also made it clear--albeit in a footnote-- that a taxpayer identifies an irregularity in the assessment procedure by simply alleging that no notice of deficiency was mailed to him. And that requires an Appeals officer to do more than consult the computerized records. Id.

**[\*30]** <u>Harrell v. Commissioner</u>, T.C. Memo. 2003-271, 2003 WL 22137919, at \*9. And we will do so again here--we will remand to the Appeals Office to clarify the record as to whether a notice of deficiency was both properly issued and mailed to Meyer in light of the intervening caselaw. The Appeals Office is not limited to what the officer considered during the first administrative hearing but rather should independently verify that a notice of deficiency was properly issued and mailed, <u>Jordan</u>, 2011 WL 4596002, at \*4 (citing <u>Hoyle II</u>, 136 T.C. at 468), under the standards we have more fully described in later cases.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.